ARTHUR H. MORSE, APPELLANT, VS. ISAAC GARRASON, APPELLEE.

The prohibition contained in the 4th section of the Act of Congress entitled "An Act to provide for the Armed Occupation and Settlement of the unsettled part of the Peninsula of East Florida," approved August 4th, 1842, has reference only to contracts for the alienation of the land made before the issuing of the patent; and was not intended to protect the land after patent issued, from other contracts or debts of the occupant to the satisfaction and payment of which, lands are subjected by the laws of this State.

Any attempt by Congress to give such protection after the title had passed from the United States, would have been abortive and nugatory.

Appeal from a judgment of the Circuit Court of the Southern Circuit sitting in and for the County of Hernando, Hon. Joseph B. Lancaster, Judge.

The opinion of the Court contains a full and clear statement of the facts and of the principles involved in the case.

*Pearson* for Appellant.

No counsel for Appellee.

ANDERSON, *Chief Justice*, delivered the opinion of the Court.

This case arose on a motion to dismiss a levy under a judgment in favor of the appellant, " upon the ground that " the land levied on was donation land, and that the pa- " tent therefor issued on a day subsequent to the day of " the date of the judgment on which the execution was is- " sued under which the levy was made." The facts made apparent to the Court upon the hearing of the motion, were as follows : At the April Term, 1847, of the Circuit Court for Hernando, then Benton County, the appellant, Morse, recovered judgment of Garrason, the appellee, for the sum of $103 12, with costs. Execution issued on the judgment on the 1st day of May, 1847, and was received by the officer on the same day. The Sheriff levied this execution on the land in question on the 19th day of March, 1851. The land thus levied on was a quarter section of land which had been patented to the defendant, Garrason, by the President of the United States in pursuance of the provisions of an act of Congress entitled " An Act to provide for the Armed Occupation and Settle- " ment of the unsettled part of the Peninsula of East Flo- " rida," approved August 4th, 1842. The patent to Gar- rason bore date the —— day of August, 1849.

Upon a consideration of these facts and the law of the case, his Honor, Judge Lancaster, pronounced the follow- ing judgment upon the motion to dismiss the levy :

" It is considered and adjudged by the Court, that the

" said judgment and execution, or either of them, consti-
" tute no lien upon the lands contained in said quarter sec-
" tion, and that the levy of the said execution thereon is
" illegal : It is therefore ordered and adjudged by the
" Court that the said levy be dismissed."

By a written agreement between the attorney for the
plaintiff and the defendant in person, the case is submitted
to this Court as on appeal from the judgment of the Court
below, on the motion to dismiss the levy. We regard the
judgment of his Honor as erroneous on two grounds : first,
that the act of Congress does not attempt to protect the
land in question, after the issuance of the patent, from a
liability for debts other than such as might be incurred on
contracts for the alienation of the land ; and secondly, that
such an attempt, if made, would have been abortive and
nugatory. The 4th section of the act is the portion of it
to which his Honor had reference in the judgment pro-
nounced by him. It is in these words : " All sales, gifts,
" devises, agreements, bonds or powers to sell, transfers or
" liens whatsoever, private or judicial, of the lands, or any
" portion thereof, acquired by this act, made at any time
" before patents shall have issued for the same, shall be
" utterly void and without effect to every intent and pur-
" pose, whether in law or equity ; and the purchaser or
" obligee under any such sale, agreement, bond or power
" to sell, transfer or lien, shall not be entitled to recover
" back the price or consideration paid therefor, but shall
" forfeit the same absolutely to such settler or his heirs."

It was one obvious intent of this provision of the act to
prevent the occupants from being disturbed in the occu-
pancy and enjoyment of their land until their title to it
should be perfected by the patent. This undisturbed pos-
session was necessary to carry out the desire of the United
States Government of filling up, with a resident popula-.

Morse *vs.* Garrason.—Opinion of Court.

tion, the frontier settlements exposed to danger from the presence of hostile Indians, who had been permitted to remain in Florida.

The possession of the land was, therefore, assured to them for five years until, by the issuance of a patent, they might be in a situation to receive the full value of the property, if they then chose to sell, or if the laws of the land should then subject the property to the satisfaction of their judgment debts.

It was also a further object of this section to protect the settler from the consequences of improvident contracts, made while his title was yet incomplete, and when, perhaps, his necessities, in a new and exposed country, might be pressing.

With this view, all sales or alienations, under whatever guise, whether private or judicial, before the issuance of the patent, are prohibited and made void, and without effect, and the party dealing with the occupant is subjected to the penalty of forfeiting the consideration he may have paid. This last provision satisfies us as to the meaning and intent of the terms, "liens, whether private or judicial," which seems to have led the Court below into error. It was clearly intended that the prohibition of sales and other alienations of the inchoate title should not be evaded by a collusive judgment and execution obtained in a Court of law; and if it had appeared to this Court that the judgment now before us, were of this collusive character, we would feel bound to give effect to the salutary guard thrown around the occupant to shield him from oppression, and to pronounce the judgment void and without effect.

There is no evidence or even allegation of any collusion in this case. The judgment must be taken to have been fairly obtained, upon a *bona fide* debt justly due to the plaintiff by the defendant, on some other contract than for

the sale of the land, and being such, it does not come within the reason of the provisions contained in the fourth section of the Armed Occupation Act. As this judgment is not, then, within the prohibition of the act, the general law of the State of Florida gives to the judgment creditor the right to satisfy his judgment out of the real estate of the defendant. Act Feb. 12, 1834, § 1; and the lien of the judgment attached upon after acquired property from the date of the acquisition.

To this conclusion the Court have come, upon the consideration of the act of August 4th, 1842. Such we deem to be a fair construction of the meaning of Congress in the prohibitions embraced in the fourth section; but as we have already intimated, we should be constrained to regard the prohibition as abortive and nugatory if the intention had been, as understood by his Honor below, to have placed the patented land beyond the reach of all pre-existing creditors, no matter what might be the nature of the claim, or how distinct it might be from any contract for the land itself. While the Government of the United States retained the title in itself, it might properly impose prohibitions upon the prospective alienation of the title by the armed occupant before he received it from that Government, and all contracts *in relation to it* may properly be declared void, but it would be a very different thing for that Government to convey a complete and perfect title to lands in this State, and at the same time to assume to exempt such lands from the operation of the general laws of this State regulating the collection of debts, or the alienation of property.

If this might be done in favor of the armed occupant, it might be done in favor of all purchasers of the national domain, and a privileged class be thus created, entitled to exemptions denied to other citizens. The same principle

would imply the right of Congress to exempt the lands sold by the United States from taxation, and thus to exempt their occupants from contributing to the support of the State Government.

We conclude, then, that the prohibition contained in the fourth section of the Armed Occupation Act, has reference only to contracts for the alienation of the land, made before the issuing of the patent, and was not intended to protect the land after patent issued from other contracts or debts of the occupant, and since the judgment now under consideration by us is not of the former class, it does not come within the prohibition, and should be satisfied, as in other cases, out of the property of the defendant.

The judgment of the Court below dismissing the levy must be reversed, and the levy re-instated, with directions to the proper officer to proceed therewith according to law.