GEORGE W. LEWTON ET AL., APPELLANTS, VS. JEREMIAH
M. HOWER, APPELLEE.

1. In cases of pressing necessity, where the threatened injury is immi-
nent, and the defendant could not be found in time, so that notice
could not be served on him, it is not an abuse of discretion on the
part of the Judge to allow an injunction without notice.

2. An injunction staying sale of lands wrongfully levied upon under
an execution issued upon a judgment at law, upon the ground that
the land is exempt from levy and sale, is not an "injunction to
stay proceedings at law" within the meaning of the statute re-
quiring notice of application therefor, and a bond in double the
amount of the verdict.

3. The levy upon land exempt by law from levy and sale, and advertis-
ing the same for sale to satisfy an execution, constitute such an
attempt to cast a cloud upon the title as to give a court of equity
jurisdiction to enjoin the sale.

4. Section 2296 of the Revised Statutes of the United States, providing
that "no lands acquired under the provisions of this chapter [the
homestead law] shall, in any event, become liable to the satisfaction
of any debt contracted prior to the issuing of the patent therefor," is
valid and does not violate the sovereignty of the States, and such
lands cannot be subject to levy and sale to satisfy the debts men-
tioned in the act. The land is granted for the benefit of the fam-
ily, and not for the benefit of creditors of the grantee.

5. A general judgment recovered for "work and labor and money ex-
pended in improving" land which is the homestead of defendant can-
not be enforced against the homestead. The Constitution exempts
a homestead from forced sale except for taxes, or for the payment
of obligations contracted for the purchase of the premises, or for
the erection of improvements thereon, or for house, field or other
labor performed on the same ; but this exception does not include
indebtedness for money expended in improving the land.

Appeal from the Circuit Court for Orange county.
The facts of the case are stated in the opinion.

John W. Price for Apellants.

E. K. Foster for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court.

Hower filed a bill in equity against the sheriff to enjoin the sale of a certain lot of land upon execution issued on a judgment in favor of Lewton against Hower, the ground of the prayer for injunction being that the land (about 40 acres) is the homestead of Hower and his family. The bill alleges that he obtained a patent for the land from the United States in April, 1880, under the United States statutes regulating the entry of homesteads, (act of Congress of May 20, 1862, Revised Stat. U. S., 1873–4 ; R. S. of U. S., Second Edition, 1878, Tit. XXXII., Ch. 5 ; 12 U. S. St. at Large, 392, Ch. 75 ;) and that the judgment was obtained prior to the issuing of said patent.

The sheriff is about to advertise and sell the land under said execution, and it is claimed that such sale will not divest complainant and his family of such homestead, but will cast a cloud upon the title, &c. Complainant also claims that his said homestead is exempt from sale under said judgment and execution by the Constitution and laws of this State.

Upon filing the bill a preliminary injunction was allowed, to be issued upon the filing of a bond in the penalty of one hundred dollars, conditioned to pay such costs and damages as may be awarded against plaintiff in case the injunction shall be dissolved.

Defendant, Lewton, who becomes a party defendant upon his own petition, demurred to the bill upon the grounds that it does not state such a case as entitles complainant to relief in equity, and that complainant has an adequate remedy at law. The court overruled the demurrer, and defendant answered that he obtained a judgment against complainant for $1,600.93 in 1879, upon which the execution issued. He further answered " that said judgment was obtained for work and labor and money expended in improving said

land " described in the bill, by reason whereof " said land became responsible for the same."

He further answers that the land " was not obtained by complainant under the homestead law of the United States, but under and by virtue of the pre-emption law; that he commuted and paid one dollar and twenty-five cents per acre, as defendant is informed and believes, and did not receive any of said land as a donation from the United States, but as a purchaser under and by virtue of the law of the United States."

Wherefore this defendant alleges that the judgment is and was a lien on said land for the payment and satisfaction of said judgment, and prays that the injunction be dissolved and the bill dismissed.

Upon filing the answer defendant moved that the injunction be dissolved : 1. Because the said injunction was granted and issued without notice first being given. 2. That said injunction was granted without first making and filing a bond in double the amount of the judgment to be enjoined, and paying the costs accrued in the suit wherein the judgment was rendered.   3. For causes shown by the demurrer. 4. For reasons shown by the answer.   5. For other reasons appearing in the proceedings.

This motion was overruled by the court.

From the several rulings of the court the defendants appealed.

I. The statute provides that no writ of injunction to stay proceedings at law shall issue, except on motion to the court or Judge and reasonable notice served on the opposite party or his attorney.  (Th. Dig., 453, S. 2.)  And no injunction shall issue to stay proceedings at law after verdict or inquest of damages, unless the party applying therefor shall have previously paid all the costs in the suit at law, and shall have entered into a bond, with sufficient

sureties in double the amount of the verdict, " conditioned to pay the debt and interest enjoined and such damages as may be occasioned by the wrongful issuing of said injunction " if the injunction shall be dissolved or the bill dismissed. (Th. Dig., 454, S. 5, as amended by Ch. 526, Laws of 1852, McClellan's Digest, Ch. 16, §§14, 18.) The only bond exacted was a bond in a penalty of one hundred dollars, no notice was given of the application for the injunction, but an affidavit was presented to the Judge stating that the reason why no notice was served was that he was unable to find the defendant, and he feared that the injury might in part be effected before notice could be served. The Judge, deeming the reason sufficient, allowed the injunction without notice. This is generally allowed in cases of pressing necessity, where the threatened mischief is imminent, and we cannot say that he abused his discretion in allowing the preliminary injunction without notice, the whereabouts of the defendant not being then known. (Kerr on Jug., * 545.) The statute requiring notice, as we shall see, does not apply to this case.

II. The next question is whether the injunction in this case was sought " to enjoin proceedings at law " in the true sense of the statute, and whether, therefore, a bond to secure the payment of the judgment and costs and other damages was required by the statute. The statute was passed with reference to what was understood to be the " enjoining of proceedings at law " according to the practice of the courts of equity. This jurisdiction of the courts of equity was invoked to prevent a party who by fraud, accident or mistake had obtained an unconscientious advantage over another from enforcing such advantage in a court of law, and though the jurisdiction of the latter was admitted, the ground of the injunction is that the parties are making use of that jurisdiction contrary to

equity and good conscience. (2 Daniells' Ch. Pl. & Pr., 5 Am. Ed. by Cooper, 1624.) In such cases, and in other emergencies, the jurisdiction of chancery was invoked to stay the entry of judgment, to stay the issuing of execution thereon, or to stay the enforcement of the execution upon a judgment for the purpose of giving opportunity to show why in conscience the judgment ought not to be entered, or why it should not be enforced. In numberless instances where parties by fraud, accident or mistake have been led into legal liabilities, or where they have been prevented by the loss of evidence or its concealment from making a valid defence at law, or where a pre-existing defence at law was not in due time known to defendants, and in like instances familiar to courts of chancery, they interposed a stay of proceedings to enable parties to show why judgment at law should not be had, or why it should not be enforced.

The "stay of proceedings at law," in the language of our statute, by injunction, was without question intended to refer to the interposition of the equitable power of the court of chancery to stay judgment or the enforcement of a judgment at law, to the end that the equitable rights and liabilities of parties could be inquired into, and ultimately permanently enjoined in whole or in part.

The object of exacting security for the whole amount of a verdict or judgment in case of such stay of proceedings was to secure the plaintiff his judgment if he was in equity entitled to it.

And it is entirely beyond doubt that the stay of proceedings at law, the stopping of the wheels of the courts of law, was neither intended to include nor does it include the enjoining of parties and officers from selling property which may not be subject to sale. There would be no sense in requiring a party to give a bond for three thousand dollars conditioned to pay this judgment of sixteen hundred merely

for the privilege of trying the question of the exemption from levy of property worth $500.

No question of the validity of the judgment is involved, nor is the execution of the judgment stayed, but a mere controversy arises as to the legal liability to sale of the property levied on by the sheriff. There is no reason for applying the statute in question to this kind of controversy, and there being no reason for it in the law, and no legitimate end to be subserved by it, there is no such rule. The statute does not apply. In the language of Chancellor Walworth, 8 Paige, 81, the statute of New York being in substance like our own : " The reasons upon which this statutory provision is founded are not applicable * * where the object of the injunction is not to stay proceedings in the suit at law against the defendant therein, or against his property upon which the judgment or execution is a *legal lien*."

For these reasons there was no error in holding that the bond mentioned in the statute referred to was not required in this case to authorize the injunction.

III. The third ground of the motion to dissolve the injunction is that the bill of complaint does not disclose a case for the interposition of a court of equity, and that the remedy at law is adequate.

While a defence might be made in ejectment brought upon a deed under a sale on execution if the property was not liable to be legally sold, yet such a sale and deed would cast a cloud upon the title, and not only affect the market value of the land but cause unnecessary anxiety and disquiet to the owner and his family. In such cases the equity courts have very uniformly interposed to prevent or remove such cloud. Irwin vs. Lewis, 50 Miss., 363 ; Dows vs. Chicago, 11 Wallace, 110 ; Petit vs. Shepherd, 5 Paige, 501 ; Key City Gas Light Co. vs. Munsell, 19 Iowa, 305 ; Budd vs. Long, 13 Fla., 288.

In the present case the bill shows that the complainant is the head of a family residing in this State upon the land described, that it was acquired under the homestead laws of the United States, and is exempted from sale under the said homestead laws, and that it is also exempt from levy and sale under the Constitution and laws of this State upon the execution issued on the defendant's judgment.   This being the case made by the bill the demurrer was not well pleaded and was properly overruled.

IV. It is insisted that the injunction should have been dissolved upon the answer.

The bill states that the complainant obtained a homestead on the land under the homestead laws of the United States, and that he obtained a patent therefor under said homestead law cited by him in the bill in 1880 after the rendition of the judgment.   The answer says the land was not obtained under the homestead laws of the United States but under the pre-emption laws, that complainant commuted and paid for it, and did not receive it as a donation but as a purchaser under the laws of the United States.

The homestead laws of the United States passed in 1862, and incorporated in the Revised Statutes, authorizes the entry of any quantity of land not exceeding one hundred and sixty acres for the purpose of actual settlement and cultivation by any citizen twenty-one years of age or the head of a family.

Section 2296, R. S., reads thus: " No lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor."

Section 2301 (same chapter) provides that nothing in this chapter shall prevent any person who has availed himself of the benefits of the first section (Sec. 2289, R. S.,) from paying the minimum price for the quantity of land

so entered at any time before the expiration of five years and obtaining a patent therefor from the government as in other cases directed by law, on making proof of settlement and cultivation as provided by law granting pre-emption rights.

The answer does not deny that the land was entered under the homestead law, but alleges that the complainant *obtained* the land by commuting and paying for it under the pre-emption laws. That may be true, yet the section last referred to authorized him, he having entered under the homestead law, to obtain his patent *in the manner* required by the pre-emption laws.

And while the title of the complainant may have been obtained, so far as the patent is concerned, under the laws regulating the issuing of the patent as provided by the law granting pre-emption rights, on payment of the price, yet the homestead law declares it to be exempt from sale to satisfy any pre-existing debt.

The answer is vague in that it does not designate the act of Congress under which he alleges' the complainant obtained his patent, and thus show that it was not obtained under the homestead law. If the title of the complainant was not obtained under the provisions of the homestead law of the United States, the land is not exempt from levy and sale by virtue of the acts of Congress. If the title was obtained under the provisions of the act relating to homestead entries, before cited, the land is exempt from such levy and sale for antecedent indebtedness if it is occupied as the homestead of the complainant and his family as he alleges in his bill. This principle is sustained in 13 Wallace, 99. This precise question was so decided in Russel vs. Lowth, 21 Minn., 167, in which it is held that the section exempting homesteads acquired under it from sale for debts antecedent to the patent is constitutional and valid and does

not violate the sovereignty of the State. The case of Gile vs. Hallock, 31 Wis., 523, also presents the identical question. The court says: " The question seems to be whether the declaration of such exemption, made in order to induce settlement upon and cultivation of the soil, is the exercise of a power granted by the words, 'to make all needful rules and regulations.' It is obvious that what may or may not be a needful rule or regulation is a question vested very largely if not entirely in the sound discretion of Congress. Congress is to judge and determine for itself what may or may not be a needful rule or regulation in the premises, and such judgment having been exercised and rules and regulations made, it is not for the courts to overrule its determination." The court in the same case holds that a sale of such land under an execution issued upon a judgment for a debt contracted before the issuing of the patent creates such a cloud upon the title as that equity may be invoked to remove it. The court in 13 Wallace, 99, says with respect to the power of Congress over the public domain : "Congress has the absolute right to prescribe the times, the conditions and the mode of transferring this property or any part of it, and to designate the persons to whom the transfer shall be made."

Lands acquired under the homestead act of Congress are granted for the benefit of the grantee and his family and not for the benefit of antecedent creditors.

Counsel for appellant contended that the exemption clause referred to is not effective to relieve the property from the operation of the laws of the State in respect to judgment liens, after the issuing of the patent, and refers to the opinion of this court in Morse vs. Garrason, 4 Fla., 460, when a judgment had been recovered in 1847 and a patent issued in 1849 under the " armed occupation act " of 14th August, 1842. The act provided that "all sales, gifts,

devises, agreements, bonds or powers to sell, transfers or liens whatever, private or judicial, of the lands or any portion thereof acquired by this act, made at any time before patents shall have issued for the same shall be utterly void and without effect." The court holds that the evident purpose of the act was to prevent any collusive sale or other alienation of the inchoate title, but did not operate to prevent a sale under the laws of the State to satisfy a pre-existing judgment, not collusive or created for the purpose of evading the provisions of the act. The court remarks that " we should be constrained to regard the prohibition as abortive and nugatory if the intention had been to have placed the patented lands beyond the reach of all pre-existing creditors."

The policy of protecting the homestead by the exemption from forced sale of a limited quantity of land had not been adopted at the time of that decision. Since then Florida, and nearly if not quite all the States, have engrafted such homestead exemptions into their constitutions and statutes. The act of Congress exempting from forced sale for debts certain lands granted as a homestead for the benefit of a family is in full harmony with our constitutional provis-visions, and we cannot regard the preceding quotation as expressing the law of the State in view of the homestead policy now adopted.

V. Appellant insists that the land in question is liable to sale under the Constitution and laws of this State regulating the homestead exemption because " the judgment was obtained for work and labor and money expended in improving the land," and for labor performed on the same.

Without reference to the question of exemption under the act of Congress, this claim is untenable. The land is owned and occupied " by the head of a family residing in this State," and consists of less than forty acres. It is,

56

therefore, a homestead.   It is exempt by the terms of the Constitution " from forced sale under any process of law," except " for taxes or for the payment of obligations contracted for the purchase of the premises and for the erection of improvements thereon, or for house, field or other labor performed on the same."

The allegation in the answer that the judgment was obtained for work and labor and money expended in improving the land, and for other labor performed on the same, does not bring the plaintiff's judgment within the exception.   A general judgment for money borrowed for or expended in making improvements, together with other indebtedness, which might by appropriate proceedings have been made a charge upon the land, cannot be enforced against the claim of exemption under the provisions of the Constitution.   A general indebtedness cannot be united and commingled with claims which might otherwise be enforced, so as to create a charge upon the land for the whole. To allow this would be practically a fraudulent evasion of the protective features of the Constitution.

The provision of the Constitution that the homestead may be liable " for the payment of obligations contracted for the purchase of the premises, or for the erection of improvements thereon," mut be strictly construed.   (3 Minn., 53.)   " An obligation contracted for the erection of improvements " is an obligation to pay for labor and materials bestowed and used in the construction of such improvements.

An indebtedness for money borrowed to purchase materials, or to pay for labor bestowed in improving lands, or money expended in the purchase of such materials, or in payment for such labor, is not an obligation contracted " for the erection of improvements," nor an obligation contracted for such labor, and is not within the exceptions of

the constitutional provisions. The contract in such case is to repay money loaned or expended, and not a contract to pay for the erection of improvements, or for labor on the premises.

The purpose of the exception of " obligations contracted for the erection of improvements " and for " labor performed on the same," so that a homestead is liable for such debts, though not for debts generally, is that those who have furnished the materials and performed the labor may have their remedy upon the property they have in part created and enhanced by the bestowal of their labor and property, and in the absence of any provision giving the lender of moneys, which have been expended upon the property, the benefit of the exception, the courts are powerless to extend it to them.

Upon the case as presented by the bill and answer the property levied upon is not liable to levy and sale under the execution and judgment mentioned in the bill, and the decrees enjoining the same, overruling the demurrer to the bill and refusing to dissolve the injunction to the answer filed are affirmed.