## TYSEN and others *v.* WABASH RY. Co. and others.*

*(Circuit Court, D. Indiana.* February 16, 1883.)

**1. RAILROAD CONSOLIDATION—INDIANA STATUTE OF—POWER AND LIABILITY OF CONSOLIDATED COMPANY UNDER.**

The result of consolidation under the statute is that the statute becomes part of the contract of consolidation; the consolidated company assumes the liabilities and succeeds to the rights of the constituent companies. The consolidated company is substituted for them. Unsecured debts of the latter remain unsecured debts of the former. The consolidated company may execute a mortgage upon all of the consolidated property, which would be paramount to the unsecured debts of the constituent companies.

**2. VENDOR'S LIEN—DEBT OF THIRD PERSON—WHEN A LIEN.**

When the consideration for the conveyance of property is the payment by the vendee of the debt of a third person, a lien exists upon the property conveyed for the benefit of such third person.

**3. SECURITY—LIEN—EQUITY EFFECTUATES INTENT, REGARDLESS OF FORM.**

Whenever it fairly appears from an instrument, notwithstanding its form, that it is intended to afford a security, an equitable lien exists in favor of the person in whose behalf the provision is made.

In 1862 the Toledo & Wabash Railway Company, of Ohio and Indiana, made an issue of bonds to the amount of $600,000, with interest payable semi-annually at 7 per cent., and principal payable May 1, 1883. Each bond bore upon its face the name, "equipment bond," although they were not especially secured upon any equipment of the company. At the time of their issue the company was liable for bonds to the amount of $5,900,000, secured by mortgages. In 1865 the Toledo & Wabash Railway Company became consolidated with other companies in Illinois, and the Toledo, Wabash & Western Railway Company was formed. In the articles of consolidation one of the "bases and conditions" thereof was stated to be, as to all bonds, that they "shall, as to the principal and interest thereon, as

*Reported by Charles H. McCarer, Asst. U. S. Atty.

the same shall respectively fall due, be protected" by the new company. The equipment bonds were included in the indebtedness of the Toledo & Wabash Company, which the new company was to "protect" and pay.

On the first day of February, 1867, the Toledo, Wabash & Western Company executed its bonds, amounting to $15,000,000, and a trust deed upon all its property to secure them. This was done to fund the company's indebtedness, which, including the equipment bonds, amounted to $13,300,000, and to raise $1,700,000 to purchase additional equipment. In this mortgage it was recited "that of the amount of said bonds so made and issued there should be retained $13,300,000, to retire, in such manner and upon such terms as the directors of such company may from time to time prescribe, a like amount of the bonds of the various companies herein above enumerated and described, and representing the aforesaid funded debt." The equipment bonds appeared in the list of bonds described in the mortgage, which were to be taken up by the new issue. After a small part of the old bonds had been exchanged for new ones, this funding scheme seems to have been abandoned.

In 1873 the Toledo, Wabash & Western Railway executed a mortgage for $5,000,000, and in 1875 proceedings were instituted to foreclose under it, and a sale took place June, 1876, of all the property in Ohio, Indiana, and Illinois, "without prejudice to any claim that may be made by the holders of the bonds called the equipment bonds."

Interest on the equipment bonds was regularly paid up to and including that due first November, 1874. But the purchasers at the sale of 1876, and their successor company, the Wabash Railway Company, having declined and refused to pay further interest, or in any way to recognize these bonds, this suit was begun in 1878 in the Fountain circuit court of Indiana. It was immediately removed by the railway company to the United States circuit court. The Wabash Railway Company having since been consolidated with the St. Louis, Kansas City & Northern Railway Company, the consolidated company, the Wabash, St. Louis & Pacific Railway Company, was joined as defendant in possession.

*Charles W. Hassler*, for plaintiff.

*Wager Swayne* and *Baker, Hord & Hendricks*, for respondent.

GRESHAM, J. No lien of any kind existed in favor of the holders of the equipment bonds prior to the consolidation in 1865. It cannot be disputed that before this consolidation, which was authorized

by law and untainted by fraud, the Toledo & Wabash Company might have executed a mortgage upon all its property, which would have been paramount to all its unsecured indebtedness, including the equipment bonds. The statute authorizing the consolidation of railroads and their possessions was in force when the equipment bonds were issued and sold, and it became a part of the contract between the Toledo & Wabash Company and the purchasers of those bonds. The purchasers must therefore be held to have contemplated, at the time they bought their bonds, that the Toledo & Wabash Company could, and possibly would, consolidate with other railroad companies. The result of a consolidation under the statute is that the consolidated company assumes the liabilities and succeeds to the rights of the constituent companies. That being so, it follows that the consolidated company may execute a mortgage upon all the consolidated property, which will be paramount to the unsecured indebtedness of the constituent companies. *McMahan* v. *Morrison*, 16 Ind. 172; *Indianapolis, C. & L. R. Co.* v. *Jones*, 29 Ind. 465; *Jeffersonville, M. & I. R. Co.* v. *Hendricks*, 41 Ind. 50; *Paine* v. *Lake Erie & L. R. Co.* 31 Ind. 283.

Was there anything in the terms of the consolidation of 1865 that gave to the holders of the equipment bonds a security or lien which they had not before? Did the consolidated company take the property and franchises of the Toledo & Wabash Company with an incumbrance which did not rest upon them before?

It was competent for the constituent companies to agree upon their own terms of consolidation provided they were not in violation of the statute authorizing consolidation. The property and rights of the Toledo & Wabash Company, at the time of the consolidation, were estimated to be worth $10,000,000. Part of the consideration for the transfer of this property to the consolidated company was the payment of the $600,000 of equipment bonds. The consolidation agreement contains the following:

"It is further agreed that the bonds and other debts herein above specified and not otherwise provided for in this agreement shall, as to the principal and interest thereon, as the same shall respectively fall due, be protected by the consolidated company according to the true meaning and effect of the instruments or bonds by which such indebtedness of the several consolidating companies may be evidenced."

The equipment bonds are embraced in the schedule of bonds and debts referred to in this clause. The agreement to pay these bonds as part of the purchase price of the property put into the consolida-

tion by the Toledo & Wabash Company was made for the benefit of the equipment bondholders, who thus acquired an equitable lien on such property. This lien is good against all persons, except subsequent purchasers without notice.

When the consideration for conveyance of property is the payment by the vendee of the debt of a third person, a lien exists upon the property conveyed for the benefit of such third person. *Nichols* v. *Glover*, 41 Ind. 24; Story, Eq. 1244; *Clyde* v. *Simpson*, 4 Ohio St. 445; *Vanmeters* v. *Vanmeters*, 3 Grat. 148; *Harris* v. *Fly*, 7 Paige, 421; *Hallett* v. *Hallett*, 2 Paige, 15.

It was no doubt the intention of the legislature in passing the statute authorizing the consolidation of railroad companies that the consolidated company should be substituted for the constituent companies and that the unsecured indebtedness of the latter should remain unsecured indebtedness of the former. While this is the result of a consolidation under the statute, as already stated, the consolidation may be on such terms as suit the contracting parties, provided these terms do not violate the statute. One of the stipulations of the consolidation agreement was payment by the consolidated company of the equipment bonds. The language of this part of the agreement, considered in connection with the terms and recitals of the consolidated mortgage, the consolidation agreement of 1868, the deed of further assurance and the prompt payment of interest on the equipment bonds, semi-annually as it became due for eight years after 1865, shows that something more was intended than the mere assumption of an unsecured indebtedness. The proceeds of the equipment bonds had been expended in the betterment of the property of the Toledo & Wabash Company; that company was to pass out of existence, and its entire property was to become part of the possessions of the consolidated company. For this reason, it may have been thought just to the owners of equipment bonds that they should have security in the nature of a lien on the property superior to any rights that might thereafter be acquired. We may assume that it was well understood by all the parties to the consolidation agreement of 1865 that the consolidated company, by the mere force of the statute which authorized its creation, was bound to pay all the debts of the constituent companies. No one understands that better than the counsel who drew up the consolidation agreement. If nothing more was contemplated by the clause quoted from this agreement than a promise to pay the equipment bonds as unsecured indebtedness, why was the word "protect" used? If the counsel of the defendants are correct in their interpretation of that

word, its use was wholly unnecessary.    Whenever it fairly appears from an instrument, notwithstanding its form, that it is intended to afford a security, an equitable lien exists in favor of the person for whose behalf the provision is made.    Jones, Mortg. 162.

The Wabash, St. Louis & Pacific Company now owns and operates the property which the Toledo, Wabash & Western Company acquired from the Toledo & Wabash Company, and denies its liability on the equipment bonds.    There is nothing to prevent the holders of these bonds from asserting against the present owners of this property the equitable lien which they were entitled to under the consolidation agreement of 1865.    All subsequent interests have been acquired with knowledge of this agreement.

These are briefly my reasons for holding that the equipment bonds are a charge upon the property now owned by the Wabash, St. Louis & Pacific Company, which originally belonged to the Toledo & Wabash Company.

A decree will be entered declaring such a charge, and for accrued interest.

The case would have been decided at an earlier day but for a statement made by the complainant's counsel that the matter in dispute might be amicably adjusted.

---

Motion for rehearing, argued before Justice HARLAN and Judge WOODS, was denied, and decree ordered to be entered in accordance with Judge GRESHAM's decision.