KILBOURNE v. WILEY.

Vendor's Lien — Enforcement by Third Person — Attorney's Fee.

An agreement that a lawyer shall have a lien on land for a specific amount, representing the value of his services in clearing up the title, is enforcible in equity against a purchaser who takes with knowledge of the arrangement, and who promises, as a part of the consideration, to pay the lawyer's claim.

Appeal from Ingham; Person, J. Submitted April 3, 1900. Decided June 5, 1900.

Bill by Samuel L. Kilbourne against Washington G. Wiley, Harry G. Wiley, James B. Judson, Nathan Judson, Frank D. Weller, and Adelia M. Weller to enforce a vendor's lien. From a decree for complainant, defendants Wileys and Judsons appeal. Affirmed.

*Samuel L. Kilbourne* (*R. C. Ostrander*, of counsel), *in pro. per.*

*Thomas, Cummins & Nichols*, for appellants.

Moore, J. The record shows the following state of facts: Prior to June, 1893, Frank D. Weller and his mother, Adelia M. Weller, claimed to be the owners of a

two-thirds interest in certain lands described in the bill of complaint. The title to the lands was in litigation. They were parties to the litigation. Harry G. Wiley claimed to be the owner of the other one-third interest in the lands. The Wellers were unable to carry on the litigation, and made an arrangement with the complainant, who is a lawyer, to take charge of it. If he established their rights in the land, he was to be paid $1,000, and was to have a lien upon the land until he was paid. The complainant took charge of the litigation, and conducted it to a successful issue. All of the defendants knew of the arrangement between Mr. Kilbourne and the Wellers, and of the rendition by him of the service, and the amount he was to be paid therefor. Possessed of this knowledge, Wiley, for Judson, Wiley & Judson, entered into negotiations for the purchase of the two-thirds interest belonging to the Wellers, and finally bought the same. Pending the negotiations, Mr. Wiley, who conducted them for Judson, Wiley & Judson, informed Mr. Kilbourne they understood exactly what the agreement was between the Wellers and him, and that, if they bought the property, they would buy it subject to his right to be paid out of the property, and would see that his interests were protected. Mr. Wiley afterwards completed these negotiations, and a deed of the property was made, according to his direction, for Judson, Wiley & Judson. As a part of the consideration for the conveyance of the land, it was agreed that Judson, Wiley & Judson would pay the claim Mr. Kilbourne had against the Wellers, and to secure the payment of which they had agreed to give Mr. Kilbourne a mortgage upon the land. After the deed was made, Mr. Wiley assured Mr. Kilbourne they had bought the land subject to the payment of the $1,000 which the Wellers had agreed should be paid to Mr. Kilbourne, and promised to pay him as soon as the decree which had been rendered in the circuit court in favor of the Wellers should become a finality. The $1,000 was not paid, and this proceeding was brought. The complainant filed an amended bill,

making both the Wellers parties thereto. The Wellers do not contest the claim of complainant, but allowed an order *pro confesso* to be entered before decree. Mr. Frank D. Weller, who represented his mother as well as himself in the arrangement made with Mr. Kilbourne, was a witness upon the trial of this case. His testimony indicates his desire to have Mr. Kilbourne receive his pay. His testimony substantiates Mr. Kilbourne's claim in nearly all essential particulars. The circuit judge rendered a decree in the cause in favor of complainant for the $1,000 and interest, and gave him a lien upon the two-thirds interest in the land sold by the Wellers to the defendants.

It is the claim of the defendants Judson, Wiley & Judson that there is no privity between the complainant and them; that he cannot assert a vendor's lien, because he was not the owner of the land, and did not make the sale; that there can be no lien, because, at the time of the agreement between Weller and Wiley, there was no certain amount fixed upon to be paid in any event, nor at any particular time. It is asserted the complainant has mistaken his remedy; that he should have secured a lien upon the land when he made the agreement with Mr. Weller, but, failing in this, he should have attached the land when he knew Mr. Weller was trying to dispose of the land. It is true that, upon the cross-examination, Mr. Weller says Mr. Wiley did not agree to pay Mr. Kilbourne $1,000, but agreed to settle with him. Another portion of his examination shows Mr. Wiley was informed the claim of Mr. Kilbourne was for $1,000, and that he agreed to pay that claim. It also shows that, in making up the aggregate of the consideration to be paid, this claim was figured at the sum of $1,000. Mr. Wiley testified that he knew the claim was $1,000. So that, taking the record as an entirety, we do not think there can be any reasonable doubt as to the amount which was to be paid.

The question of whether the complainant is in a condition to enforce the agreement, and assert a lien upon the real estate, presents serious difficulties, but, unless they are

insurmountable, the equities of the complainant are so strong they ought not to prevail.   It has been repeatedly held that the vendor of real estate has an equitable lien upon it for the purchase money, where no security for its payment has been taken.   *Carroll* v. *Van Rensselaer*, Har. Ch. 225; *Dunton* v. *Outhouse*, 64 Mich. 425 (31 N. W. 411).   It is also a well-established rule of law that a vendee who has paid prematurely purchase money for real estate has a lien against the vendor analogous to that of a vendor in an opposite case.   *Payne* v. *Atterbury*, Har. Ch. 414.   In *Michigan State Bank* v. *Hastings*, 1 Doug. (Mich.) 258 (41 Am. Dec. 549), this language is used:

"No principle is now better settled than that the vendee of lands becomes a trustee to the vendor for the purchase money, or so much as remains unpaid.   2 Story, Eq Jur. 463–465.   In such a case the trust is implied, and arises from what are called 'equitable liens,' of which courts of equity alone take cognizance.   Such liens exist independently of any express agreement, and courts of equity enforce them on the principle that a person, having gotten the estate of another, ought not in conscience, as between them, to be allowed to keep it, and not pay the consideration money.   The Roman law declared the lien to exist in natural justice, and this principle, which is now ingrafted in the equity jurisprudence both of England and this country, was borrowed from the civil law.   By that law the rule was equally applied to the sale of movable and of immovable property.   2 Story, Eq. Jur. 408."

*Sears* v. *Smith*, 2 Mich. 243.

In *Huxley* v. *Rice*, 40 Mich. 73, this language is used:

"It is the settled doctrine of the court that, where a conveyance is obtained for ends which it regards as fraudulent, or under circumstances it considers as fraudulent or oppressive, by instant or immediate consequence, the party deriving title under it will be converted into a trustee, in case that construction is needful for the purpose of administering adequate relief; and the setting up the statute against frauds by the party guilty of the fraud or misconduct, in order to bar the court from effective interference with his wrong-doing, will not hinder it from forcing on his conscience this character as a means to baffle

his injustice or its effects.   2 Comp. Laws 1871, §§ 4692, 4693; 1 Story, Eq. Jur. §§ 330, 333; 2 Story, Eq. Jur. §§ 1254, 1265; 1 Spence, Eq. Jur. 511; 2 Spence, Eq. Jur. 194, 294, *et seq.;* Hill, Trustees, 144; *Mestaer* v. *Gillespie*, 11 Ves. 621; *Pickett* v. *Loggon*, 14 Ves. 215, 234; *Barnesly* v. *Powell*, 1 Ves. Sr. 284, 289; *Young* v. *Peachy*, 2 Atk. 254, 257; *Brown* v. *Lynch*, 1 Paige, 147; *Hutchins* v. *Lee*, 1 Atk. 447; *Wolford* v. *Herrington*, 74 Pa. St. 311 (15 Am. Rep. 548); *Gregory* v. *Williams*, 3 Mer. 582."

See, also, *Miller* v. *Aldrich*, 31 Mich. 408.

In the case of *Tysen* v. *Railway Co.*, 15 Fed. 763, it is said:

"When the consideration for conveyance of property is the payment by the vendee of the debt of a third person, a lien exists upon the property conveyed for the benefit of such third person.   *Nichols* v. *Glover*, 41 Ind. 24; 2 Story, Eq. Jur. § 1244; *Clyde* v. *Simpson*, 4 Ohio St. 445; *Vanmeter's Ex'rs* v. *Vanmeter*, 3 Grat. 148; *Harris* v. *Fly*, 7 Paige, 421; *Hallett* v. *Hallett*, 2 Paige, 15."

In *Lee* v. *Newman*, 55 Miss. 365, this language is used:

"Nor is an obligation to pay the debts of the vendor to a third person, though in parol, obnoxious to that provision of the statute of frauds which requires all undertakings to pay the debts of another to be in writing.   Such assumptions are not within the statute.   The contract is, not to pay the debts of another, but to pay the party's own debt to some person other than his own creditor.

" 'It may be stated as a general rule that wherever the main purpose and object of the promisor is, not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing the liability of another.'   3 Pars. Cont. (5th Ed.) 24.

"The statute of frauds was intended to protect from the enforcement of parol contracts to be answerable for the liabilities of others, but not to shield a party from the performance of his own contracts, though the effect of such

performance would liquidate also the liabilities of another. Nor will it make any difference that the liability of the original debtor continues after the assumption by the new one.    The contract not being within the statute, this cardinal test of whether it is a collateral or an original undertaking (see *Sweatman* v. *Parker*, 49 Miss. 19, and *Bloom* v. *McGrath*, 53 Miss. 249) does not apply.    It is not the debt of another, but his own debt, which he has promised to pay; and neither the fact that the payment is to be made to a third person, nor the fact that in paying his own debt he extinguishes that of another, nor the fact that the liability of that other continues the same after as before his undertaking, brings it within the statute.    \*    \*    \*    Especially will this right to bring suit in his own name exist in behalf of him for whose benefit the promise was made where the consideration of it was money or property simultaneously delivered or sold to the promisor.    In such case the property is received under a trust, which will itself form a good consideration, inuring to the benefit of him to whom the payment is due; and, if the purchaser has received credit for the sum thus contracted to be paid to such other person, the law will treat it as money had and received to his use.    1 Chit. Pl. 5; *Arnold* v. *Lyman*, 17 Mass. 400 (9 Am. Dec. 154); *Hall* v. *Marston*, 17 Mass. 579; *Dunlop* v. *Silver*, 1 Cranch, 429 (Append.); *Barker* v. *Bucklin*, 2 Denio, 45 (43 Am. Dec. 726); *Hendrick* v. *Lindsay*, 93 U. S. 143; *Lawrence* v. *Fox*, 20 N. Y. 268; 1 Pars. Cont. (5th Ed.) 466–468.

"In *Dearborn* v. *Parks*, 5 Greenl. 81 (17 Am. Dec. 206), and in *Whitbeck* v. *Whitbeck*, 9 Cow. 266 (18 Am. Dec. 503), the exact question here involved was presented.    The purchasers of real estate had assumed (in one case in writing, and in the other by parol) to pay a portion of the purchase money to creditors of the vendor. Though these creditors were not parties to the contract, it was held that they could recover the amounts so promised to be paid them by direct action in their own names.    A personal recovery in such a case would not be permissible, as before remarked, under the construction of the statute of frauds announced in *Marqueze* v. *Caldwell*, 48 Miss. 23, but, as we have seen, the vendor could assert his lien against the land.    There can be no good reason for denying the same remedy to him for whose benefit the assumption was made.    By reason of the assumption, the purchaser has obtained a diminution in the amount paid to the vendor, and has taken the land charged with an

equity in favor of a third person. A court of equity, in analogy to that principle which in a court of law would enable such third person to maintain an action of *assumpsit* if there was a personal liability incurred by the vendee, will permit him to assert against the land that trust which was fastened on it for his benefit; and this he can do both against the vendee and against all deriving title through the conveyance, which gave notice upon its face that the purchase money was unpaid, and was to be paid to him."

In *Barrett* v. *Lewis*, 106 Ind. 120 (5 N. E. 910), the court uses the following language:

"The lien which arises in favor of the vendor of land, or of the person to whom purchase money is due, is peculiarly of equitable cognizance. Equity has regard in such cases, as in others, for the substance, and not the mere form, of the transaction. Disregarding form, a court of equity will not permit substantial equities, which are clearly established, to be defeated by the interposition of merely nominal or technical distinctions. If, upon looking through the transaction, it appears that a debt is in fact part of the purchase price of land acquired in the transaction out of which the debt arose, no other obstacle intervening, a lien will be declared upon the land so acquired in favor of the person to whom such debt is due. This is clearly the result of the well-considered case of *Dwenger* v. *Branigan*, 95 Ind. 221, and the authorities there cited. * * * It is the unpaid purchase money which creates the lien, and it is of no consequence to whom the money is due, so that it can be regarded in equity as purchase money. The lien results from the transactions between the parties, and is manifested by all the circumstances attending each particular case. *Boyd* v. *Jackson*, 82 Ind. 525; *Nichols* v. *Glover*, 41 Ind. 24."

In 2 Jones, Liens, § 1094, it is said: "The lien exists in favor of a third person to whom the vendee, at the vendor's request, has agreed to pay a portion of the purchase money;" citing a long list of cases. See 2 Sugd. Vend. 376, note; 1 Perry, Trusts (5th Ed.), §§ 232-238.

The services rendered by the complainant converted a title about which there was a question into a valid title. For the payment of these services he was to receive a mortgage. Before he received it, the land was conveyed

to the contesting defendants, who had knowledge of the agreement, upon their promise to pay as a part of the consideration this claim of complainant, which was recognized by the Wellers. The land has been deeded. Refusal of payment is now made. Does the claim that the title to the land can be held, and the vendees be relieved from the payment of the consideration, appeal to one's conscience? We think not, and we think the equity power of the court is sufficient to prevent such a wrong, and do not doubt, under the authorities cited, the circuit judge was fully authorized to make the decree he did.

The decree is affirmed, with costs.

The other Justices concurred.