MORGAN F. JONES, AS TRUSTEE IN BANKRUPTCY OF JACKSON-VILLE BREAD COMPANY, A CORPORATION, BANKRUPT, *Appellant*, v. J. WELLER CARPENTER, *Appellee*.

Division A.

Opinion Filed October 24, 1925.

1. The doctrine of equitable liens would never have come into existence if it were true that one who claims such a lien must first show a lien at law. Equitable liens become necessary on account of the absence of similar remedies at law.

2. The doctrine of equitable liens is one of great importance and of wide application in administering the rights and remedies peculiar to equity jurisprudence, there is perhaps no doctrine which more strikingly shows the difference between the legal and the equitable conceptions of the judicial results which flow from the dealings of men with each other, from their express or implied undertakings.

3. An equitable lien is not an estate or property in the things itself, nor a right to recover the thing, that is, a right which may be the basis of a possessory action; it is neither a *jus ad rem* nor a *jus ad re*. It is simply a right of a special nature over the thing, which constitutes a charge or encum-

brance upon the thing, so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under a judicial decree, and its proceeds in the one case, or its rents and profits in another, applied upon demand of the creditor in whose favor the lien exists.

4. The doctrine of equitable liens follows the doctrine of subrogation. They both come under the maxim, equality is equity, and are applied only in cases where the law fails to give relief and justice would suffer without them.

5. An equitable lien exists independently of any express agreement, and equity enforces it on the principle that a person having gotten an estate of another ought not in conscience to keep it as between them. Included in this case of liens is the vendor's lien.

6. The equitable lien differs essentially from a common law lien, the latter being the mere right to retain the possession of some chattel until a debt or demand due the person thus retaining it is satisfied. Possession being such a necessary element that if it is voluntarily surrendered by the creditor the lien is at once extinguished, while in the former or equitable lien possession remains with the debtor who holds the proprietary interest.

7. Equitable liens arise from two sources, viz: (1) a written contract which shows an intention to charge some particular property with a debt or obligation, (2) is declared by a court of equity out of general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings in the particular cases.

8. Equitable liens are necessarily based on the doctrine of estoppel, and usually arise in cases of expenditures by one joint owner on real and other property, or in case where a party innocently and in good faith makes improvements on the property of another. These are by no means the only instances in which they may arise.

9. The organic and statutory provisions relating to homestead exemptions should be liberally construed in the interest of

the family home, but they should not be applied so as to make them an instrument of fraud or imposition upon creditors.

10. Funds spent for labor and improvements on the house occupied and claimed by one as his home are clearly within the qualifications to the homestead as defined in Section I of Article 10, of our Constitution, and the homestead is not exempt from sale to satisfy claims for such labor and improvements.

11. A judgment grounded on contract for money loaned is not enforceable against one's homestead, but when a trusted employee while acting in a fiduciary capacity without the knowledge or consent of his employer, takes his (employer's) funds and converts said funds into labor and material to make substantial improvements on his (employee's) home, such home may be subjected to the payment or restoration of said funds.

12. A homestead in this country is for the benefit of the family where it can be sheltered, and live beyond the reach of financial reverses. It cannot be alienated except as the law directs, and when the parties are *sui juris* and dealing at arm's length it is notice to the world of all these facts and more, but it cannot be employed as a shield and defense after fraudulently imposing on others.

An Appeal from the Circuit Court for Duval County; George Couper Gibbs, Judge.

Reversed.

*Frank E. Jennings,* and *Marks, Marks* and *Holt,* for Appellant;

*C. M. Cooper, Chas. P.* and *J. J. G. Cooper,* for Appellee.

TERRELL, J.—In February, 1919, J. Weller Carpenter, appellee here, entered into contract to purchase a certain house and lot in Jacksonville, Florida, making specified

payments thereon, and he immediately entered into possession thereof by occupying the house with his family.

Said appellee Carpenter was president of the Jacksonville Bread Company, a corporation under the laws of this State, which was on July 5th, 1921, adjudged to be a bankrupt, petition in bankruptcy having been filed against it December 27, 1920. At a meeting of the creditors of said Jacksonville Bread Company held October 1, 1921, appellant, Morgan F. Jones, was appointed trustee in bankruptcy.

Carpenter drew a salary of ten thousand dollars per annum as president of the Bread Company, was one of its directors, and exercised the authority of drawing checks for and disbursing the funds of the corporation. It is admitted by Carpenter that his full salary for the year 1920 was paid by the company and that he was entitled to receive no other funds whatsoever from the corporation for that year.

Notwithstanding Carpenter's full salary for the year 1920 was paid and he had no further claims against the Bread Company in October and November of that year he as president checked out of and drew from the funds and assets of said Company one hundred sixty dollars and fifty nine cents ($160.59) to pay for paints, two hundred five dollars ($205.00) to pay for labor and one hundred seventy dollars and twenty-five cents ($170.25) to pay for roofing and shingles all of which paints, labor, roofing and shingles were applied to the house purchased by appellee as already referred to in this opinion and constitute a valuable improvement to said house which was and is the property of said Carpenter and was never claimed as an asset of the Bread Company.

It is shown that Carpenter has never paid to the Bread Company the foregoing amounts or any part thereof taken

from its assets to pay for said valuable improvements to his property, that said amounts are long past due, that Carpenter is insolvent and unable to pay or return the same, that a judgment against him would be uncollectable and that the liabilities of the said corporation far exceed its assets and unless relief is given, the creditors of the corporation will be deprived of their assets so expended.

On the foregoing statement of facts appellant representing the creditors of the said corporation brought his bill in chancery praying that a lien be decreed in his favor upon the interest of said Carpenter in and to said property aforesaid, for the aggregate sum heretofore set out, that decree may be entered requiring him, the said Carpenter, to pay the said sums to appellant within a time certain and that in default thereof the title and interest of said Carpenter in and to said property may be sold at a time and in a manner prescribed by the Court.

Demurer to the bill was overruled. Answer was filed admitting the essential allegations of the bill but resisting the relief sought on the ground that the Bread Company did not furnish the labor or materials and that they did not constitute a valuable improvement to the property and that said property was the homestead of defendant below. On final hearing the chancellor found the equities to be in favor of defendant Carpenter and dismissed the bill of complaint.

Appeal is taken from the order dismissing the bill and the sole question presented here for our determination may be stated as follows: Under the facts as above related did appellant acquire an equitable lien in and to the property of appellee Carpenter that can be enforced against his (appellee's) claim for homestead exemption?

Appellant is not within any of the classes enumerated in Sections 3496 and 3499 of the R. G. S. of Florida provid-

ing for statutory liens in certain cases, and in fact the parties who furnished the materials and performed the labor in question have been compensated out of the funds of the Bread Company, so any claim of appellant on the basis of a statutory lien, if there be such claim, is without merit, but the doctrine of equitable liens would never have come into existence if it were true that one who claims such a lien must first show a lien at law. Equitable liens become necessary on account of the absence of similar remedies at law. Burden Central Sugar Refining Company v. Ferris Sugar Mfg. Co., et al., 78 Fed. 417. The showing is ample to have granted the relief provided under these two sections if it had been sought by such as come within the classes so enumerated.

In Society of Shakers v. Watson, 68 Fed. 730, it was said that the doctrine of equitable liens is one of great importance and of wide application in administering the rights and remedies peculiar to equity jurisprudence. There is perhaps no doctrine which more strikingly shows the difference between the legal and the equitable conceptions of the juridical results which flow from the dealings of men with each other, from their express or implied undertakings.

An equitable lien is not an estate or property in the thing itself nor a right to recover the thing,—that is, a right which may be the basis of a possessory action; it is neither a *jus ad rem* nor a *jus in re*. It is simply a right of a special nature *over* the thing, which constitutes a charge or encumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under a judicial decree, and its proceeds in the one case, or its rents and profits in the other, applied upon the demand of the creditors in whose favor the lien exists. It is the very essence of this condition that while the lien continues the possesion of the thing remains with

the debtor or the person who holds the proprietary interest subject to the encumbrance. Pomeroy's Equity Jurisprudence, vol. 3 (4th ed.), page 2958.

In Garrison v. Vermont Mills Company, 154 N. C. 1, 69 S. E. 743, 744, 31 L. R. A. (N. S.) 450, equitable liens were defined as such as arise either from a written contract which shows an intention to charge some particular property with a debt or obligation or declared by a court of equity from the facts and circumstances of the case and do not depend on possession. They are more properly a charge on the thing which can be enforced only in equity. Vivion v. Nicholson, 54 Tex. Civ. App. 43, 116 S. W. 386, 388.

In Capen v. Garrison, 193 Mo. 335, 5 L. R. A. (N. S.) 838, 92 S. W. 368, 372, it was said that the doctrine of equitable lien follows the doctrine of subrogation. They both come under the maxim, equality is equity, and are applied only in cases where the law fails to give relief and justice would suffer without them. The doctrine of equitable lien is not a limitless remedy to be applied according to the measure of the conscience of the particular chancellor any more than, as an illustrious law writer said, to the measure of his foot.

In Kilbourne v. Wiley, 124 Mich. 370, 83 N. W. 99, 100, it is said that an equitable lien exists independently of any express agreement and equity enforces it on the principle that a person having gotten an estate of another ought not in conscience to keep it as between them. Included in this class of liens is the vendor's lien. Burden Central Sugar Refining Co. v. Ferris Sugar Mfg. Co., 78 Fed. 417, 421; Field v. Lang, 87 Me. 441, 32 Atl. Rep. 1004.

The equitable lien differs essentially from a common law lien, the latter being the mere right to retain possession of some chattel until a debt or demand due the person thus retaining it is satisfied. Possession being such a

necessary element that if it is voluntarily surrendered by the creditor the lien is at once extinguished while in the former or equitable lien possession remains with the debtor or person who holds the proprietary interest. Jones on Liens (3rd ed.) vol. I 26; Pomeroy's Equity Jurisprudence (4th ed.) vol. 3, 2958; 17 R. C. L. 605.

From the foregoing it is seen that equitable liens arise from two sources, viz: (1) a written contract which shows an intention to charge some particular property with a debt or obligation, (2) is declared by a court of equity out of general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings in the particular case. Jones on Liens, *supra;* 17 R. C. L. 605, *supra;* 25 Cyc. 667. Equitable liens are necessarily based on the doctrine of estoppel and usually arise in cases of expenditures by one joint owner on real or other property or in cases where a party innocently and in good faith makes improvements on the property of another. These last two however are by no means the only instances in which they may arise.

What are the considerations of right and justice supporting the claim for equitable lien in the case at bar? The record shows that appellant brought this suit in behalf of the creditors of the Jacksonville Bread Company, a bankrupt corporation, that in October and November, 1920, appellee being its president took from the funds of said corporation the aggregate sum of $535.84 more specifically referred to elsewhere in this opinion and used the same to pay for labor and materials to improve his home, that he did in fact make substantial improvements on his home with said funds, that in less than two months after said funds were withdrawn petition in bankruptcy was filed against said corporation and on July 5, 1921, it was adjudicated a bankrupt, that appellee is insolvent and judgment against

him would be worthless and that he now refuses to replace said funds or pay same into the bankrupt estate or any part thereof and defends against such payment on the ground that said funds have become a part of his homestead.

Appellee in other words takes the position that as president of the Jacksonville Bread Company after being fully compensated for his salary ($10,000.00 per annum) and every other legal claim he had against it, he can then fraudulently or surreptitiously extract from its assets the sum of $535.84 in cash and use the same to improve his home thereby contributing to the bankruptcy of the Bread Company to the detriment of innocent creditors and then claim immunity from re-paying the funds or assets so taken by virtue of his homestead exemption.

Purely from the standpoint of commercial or business ethics it would be difficult to state a set of facts constituting more reprehensible conduct, and while this court has repeatedly held that organic and statutory provisions relating to homestead exemptions should be liberally construed in the interest of the family home, they should not be applied so as to make them an instrument of fraud or imposition upon creditors. Milton v. Milton, 63 Fla. 533, 58 So. 718. This case presents an instance of injustice and hardship on creditors that the homestead exemption should not be extended to, and we think appellee must make restitution.

Section 1 of Article X of our Constitution after defining a homestead attaches to it the following qualification: "But no property shall be exempt from sale for taxes or assessment, or for the payment of obligations contracted for the purchase of said property or for the erection or repair of improvements on the real estate exempted, or for house, field or other labor performed on the same." The funds

involved in this litigation were all spent for labor and improvements on the house which appellee seeks to exempt and are clearly within the qualifications to his homestead as above enumerated.

Appellee relies on Lewton v. Hower, 18 Fla. 872, to support his defense of homstead exemption. In Lewton v. Hower, the judgment which was sought to be enforced was a general one for money borrowed to make improvements including other indebtedness which the court clearly indicated might have by appropriate proceedings been made a charge upon the lands. It was an omnibus judgment in other words embracing or based on items clearly not enforceable against one's homestead. In the case at bar no such situation is presented. The funds sought to be recovered were used for labor and materials to improve appellee's homestead and were taken from the assets of the Bread Company by appellee when he was its president and one of its directors and when it (the Bread Company) was facing bankruptcy.

If the claim here sought to be recovered had been based on a contract for money loaned that was used to make the improvements, then the parties, both being competent to contract, would have been dealing at arms length and the rule in Lewton v. Hower would be applicable, but that is not the case here. Carpenter was the trusted employee and president of the Bread Company; and while acting in such fiduciary capacity without the knowledge or consent of his employer committed the tortious act and converted the funds so taken into labor and materials to make substantial improvements on his home. Appellant, who steps into the shoes of the Bread Company, cannot follow said funds or materials into Carpenter's home and recover them, they having been so converted, but he can subject the home to the repayment or restoration of said funds. To hold other-

wise would mean the abandonment of a fundamental principle of equity jurisprudence and substituting in lieu thereof a code of business ethics and commercial integrity conceived in the conscience of the embezzler.

A homestead in this country is for the benefit of the family where it can be sheltered and live beyond the reach of financial reverses. It is one of the issues of our republican government designed to encourage freeholders, those citizens who are the prop and mainstay of all free government. It is designed to keep sacred and inviolate the home for the family regardless of the amount of the indebtedness or the number of creditors of the head of the family. It cannot be alienated except as the law directs, and when the parties are *sui juris* and dealing at arms length it is notice to the world of all these facts and more, but it cannot be employed as a shield and defense after fraudulently imposing on others.

Appellant sues as trustee in bankruptcy of Jacksonville Bread Company. The National Bankrupt Act recognizes State exemption laws. We have examined its various provisions affecting the subject matter of this litigation, and while we think a discussion of these provisions would materially support our finding, such discussion becomes unnecessary since we hold that appellee under the facts here shown to exist cannot enjoy tortiously acquired property by claiming it as a part of his homestead exemptions.

Our conclusion is that appellant has an equitable lien in and to the property of appellee as described in the bill of complaint and that said lien can be enforced against his (appellee's) homestead exemption. Kilbourne v. Wiley, and Society of Shakers v. Watson, *supra,* are in line with the view as here expressed. The decree of the chancellor is therefore reversed.

WEST C. J., AND WHITFIELD, ELLIS, STRUM AND BROWN, J. J., concur.