ELIZABETH HARRIS FOLSOM and L. P. FOLSOM, her husband, and J. A. HARRIS, *Appellants*, v. FARMERS BANK OF VERO BEACH, a corporation, *Appellee*.

136 So. 524.

Special Division B.

Opinion filed August 11, 1931.

T. B. *Ellis, Jr.*, for Appellants;

*Vocelle & Mitchell*, for Appellee.

BUFORD, C.J.—The bill of complaint in this case alleges in effect that J. A. Harris was indebted to Farmers Bank of Vero Beach. He had posted as collateral security to secure his indebtedness to the Bank a real estate mort-

gage with the notes which the mortgage was given to secure. While still indebted to the Bank he went to the Bank and procured the mortgage and notes which he had pledged as collateral under an agreement with the Bank that he would foreclose the mortgage, buy the property in his own name and thereupon execute and deliver to the Bank a mortgage on the identical property from himself to the Bank to secure the then existing loan. Under this agreement, the Bank delivered the notes and mortgage to Harris in trust for the purpose of Harris foreclosing the same, acquiring title to the property and executing a mortgage in favor of the Bank as aforesaid. That Harris foreclosed the mortgage, bought in the property, took title in his own name and then without consideration and with intent to defraud the Bank, conveyed the property to his daughter, Elizabeth Harris Folsom. The bill prayed that the conveyance from Harris to his daughter be decreed to be in fraud of complainant's rights and that same be set aside and cancelled and that the defendant Harris be held to hold the property involved in this suit in trust for the complainant, the Bank, to the extent of the indebtedness of Harris to the Bank and that the Bank be decreed to have an equitable lien on the property to the extent of such indebtedness and that Harris be decreed to pay the amount found to be due the Bank within a reasonable time to be fixed by the court and that upon failure to pay the same the equitable lien of the complainant in and to the property be foreclosed and the property be sold to satisfy the lien.

L. P. Folsom was made party to the suit because of being the husband of Elizabeth Harris Folsom, daughter of J. A. Harris to whom the property was conveyed.

The defendants filed demurrer to the bill of complaint. Then Elizabeth Harris Folsom and L. P. Folsom, her husband filed separate demurrer to the bill of complaint

and J. A. Harris filed separate demurrer to the bill of complaint. On hearing all demurrers were overruled. From the order overruling the demurrers appeal was taken.

The only question presented is whether of not under the facts as alleged in the bill of complaint an equitable lien was created in favor of the Bank. In other words, where a new mortgage is promised in place of collateral held as security for an indebtedness and the debtor procures custody of the collateral upon the faith of the Bank in the promise to make and execute a new mortgage and the debtor fails to carry out his agreement with the Bank, but conveys the property on which the mortgage was promised to a near relative without consideration, does the creditor acquire an equitable lien on the property upon which the mortgage is promised and may he enforce such equitable lien against the property?

The theory of the bill as stated by the appellee, and which we find to be the fact, is:

"That the appellant, Harris, having promised the bank to execute a mortgage to it on the property and having obtained a release of the collateral security on the strength of this promise, that equity will look upon that as done which should have been done and will enforce the executory agreement as if the mortgage had been actually executed and will enforce it upon the theory of an equitable lien necessary to be placed upon the property in order to do justice between the parties, and that the subsequent conveyance of the property to his daughter being without consideration, she is not an innocent purchaser and no notice of the agreement between her father and the bank need be brought home to her for the reason that not being a purchaser for value she is not protected by reason of her deed."

The bill of complaint sets up an executory agreement which did not convey or transfer any legal estate in the property but that agreement did stipulate the property should be security for the debt for which the collateral

received by the debtor had been theretofore held as security and this agreement was an equitable pledge of the property for the performance of the obligation of Harris to the Bank.

Mr. Pomeroy in his work on Equity Jurisprudence, Vol. 3, 4th ed., says:

"The form or particular nature of the agreement which shall create a lien is not very material, for equity looks at the final intent and purpose rather than at the form and if the intent appears to give, or to charge, or to pledge property, real or personal, as a security for an obligation and the property is so described that the principal things intended to be given or charged can be sufficiently identified, the lien follows."

In the case of Jones vs. Carpenter, 90 Fla. 407, 106 Sou. 127, this Court, speaking through Mr. Justice Terrell said:

"The doctrine of equitable liens is one of great importance and of wide application in administering the rights and remedies peculiar to equity jurisprudence; there is.perhaps no doctrine which more strikingly shows the difference between the legal and the equitable conceptions of the judicial results which flow from the dealings of men with each other, from their express or implied undertakings.

3. An equitable lien is not an estate or property in the things itself, nor a right to recover the thing, that is, a right which may be the basis of a possessory action; it is neither a *jus ad rem* nor a *jus ad re*. It is simply a right of a special nature over the thing, which constitutes a charge or encumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under a judicial decree, and its proceeds in the one case, or its rents and profits in another, applied upon demand of the creditor in whose favor the lien exists.

4. The doctrine of equitable liens follows the doctrine of subrogation. They both come under the maxim, equality is equity, and are applied only in cases

where the law fails to give relief and justice would suffer without them.

5. An equitable lien exists independently of any express agreement, and equity enforces it on the principle that a person having gotten an estate of another ought not in conscience to keep it as between them. Included in this class of liens is the vendor's lien.''

It appears clear that the Bank acquired the right to have Harris upon becoming the owner of the property at master's sale execute to the Bank a mortgage on the land so acquired to secure the obligation for which the collateral had theretofore been pledged and, as equity will deem to have been done that which should have been done, the Bank acquired an equitable lien on the lands as soon as Harris became purchaser at the master's sale of the same and had the right to enforce its equitable lien against the property for the collection of its debt.

If, as stated in the bill of complaint, the conveyance by Harris to his daughter was without adequate consideration, that is unless she is in a position to show that she is an innocent purchaser for value, the conveyance by Harris to her is of no effect. That this rule is applicable here cannot be doubted. The principles underlying it were enunciated by this Court in the case of McKeown vs. Allen, 37 Fla. 490, 20 Sou. 556, wherein it is said:

"A voluntary conveyance by one who is indebted is presumptively fraudulent when attacked by a judgment creditor upon a debt existing at the time of its execution. In such cases it is not necessary to show that the debtor was actually insolvent at the time he executed the conveyance.

The general rule is that a deed with a consideration merely nominal will be considered voluntary as against attacking creditors.

Voluntary conveyances by debtors of their real estate are not absolutely fraudulent *per se* but are *prima facie* or presumptive evidence of fraud, which may be re-

butted or explained, and the burden of proof to show that the deed was not fraudulent falls upon those claiming under it."

For the reasons stated, the order appealed from should be affirmed and it is so ordered.

Affirmed.

WHITFIELD AND BROWN AND DAVIS, J.J., concur.