HARRY EDELSON, *et ux.*, v. ELLA X. QUINN, a feme sole.

167 So. 535.
Division B.
Opinion Filed April 11, 1936.

*S. J. Barco,* for Appellants;
*Ben S. Hancock, Jr.,* for Appellee.

BUFORD, J.—The appeal here is from an order denying motion to transfer the cause. The transfer of cause was sought under provisions of Section 75 of 1931 Chancery Practice Act, which section is as follows:

"ACTION AT LAW ERRONEOUSLY BEGUN A SUIT IN EQUITY: TRANSFER TO COURT OF LAW.—If at any time it appears that a suit commenced in equity should have been brought as an action at law, it shall be forthwith transferred to the law court of competent jurisdiction and be there proceeded with, with only such alteration in the pleadings as shall be essential. In such cases an order shall be made by the court for the transfer of the cause and the transmission of all papers filed therein to the proper law court, and thereupon the originals of such papers shall be so transmitted and filed, together with a certified copy of the order; provided, however, that when the transfer is to the law side of the same court it shall be effected by the order of transfer."

The grounds for the motion were as follows:

"1. It appears from the record in this case that the cause of action is not within the jurisdiction of a Court of Equity.

"2. A Court of Equity will enforce a vendor's lien only on real property and not on personal property.

"3. A Court of Equity will not enforce a vendor's lien when the total purchase price includes both real property and personal property and the amounts to be paid for each class of property respectively are not clearly designated.

"4. The only cause of action which the plaintiff has is based on the alleged promissory note referred to in the amended bill of complaint."

We think there is no error in denying motion to transfer the cause.

The complainant in the court below by an amended bill of complaint sued to enforce a vendor's lien against certain real estate for the unpaid balance amounting to $200.00.

The plaintiff had sold the following described property:

"Lots Twenty (20) and Twenty-one (21), Block Nine (9), in Northern Boulevard Tract, a subdivision of part of

the Northwest Quarter (NW¼) of Section 25, Township 53 South, Range 41 East, according to the recorded plat thereof in Plat Book 2, page 29, Dade County, Florida Records; together with the seven (7) cottages built thereon and known and numbered as 527 to 537 Northwest 30th Street, in the City of Miami, Florida; and also the furnishings, fixtures and equipment contained in the seven (7) cottages," to the defendants for the sum of $2,500.00 upon which $2,300.00 was paid and the balance was never paid nor secured, though a note was given by Harry Edelson and it was the payment of this $200.00 which complainant sought to enforce in equity by claiming and seeking to establish a vendor's lien on the real estate for that amount.

In the case of Johnson v. McKinnon, 45 Fla. 388, 34 Sou. 272, this Court quoted with approval from McKeown v. Collins, 38 Fla. 276, 21 Sou. 103, saying:

" 'A vendor's lien is that lien which in equity is implied to belong to a vendor for the unpaid purchase price of land sold by him, where he has not taken any other lien or security for the same, beyond the personal obligation of the purchaser. Such lien is not the result of any agreement between vendor and vendee, but is simply an equity raised by the courts for the benefit of the former.' And, in accordance with the principle laid down in 2 Warville on Vendors, Sec. 676, stating that a vendor's lien 'being created by inference alone, it is in effect a mere equity raised and administered by the courts, by whom it will be enforced or denied between parties, as the exigencies of each particular case may seem to require.' "

In Jones v. Carpenter, 90 Fla. 407, 106 Sou. 127, 43 A. L. R. 1409, we held:

"The doctrine of equitable liens follows the doctrine of subrogation. They both come under the maxim, equality

is equity, and are applied only in cases where the law fails to give relief and justice would suffer without them.

"An equitable lien exists independently of any express agreement, and equity enforces it on the principle that a person having gotten an estate of another ought not in conscience to keep it as between them. Included in this case of liens is the vendor's lien.

"The equitable lien differs essentially from a common law lien, the latter being the mere right to retain the possession of some chattel until a debt or demand due the person thus retaining it is satisfied. Possession being such a necessary element that if it is voluntarily surrendered by the creditors the lien is at once extinguished, while in the former or equitable lien possession remains with the debtor who holds the proprietary interest.

"Equitable liens arise from two sources, viz.: (1) a written contract which shows an intention to charge some particular property with a debt or obligation, (2) is declared by a court of equity out of general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings in the particular cases."

This case was referred to and the enunciation approved in Folsom v. Farmers Bank of Vero Beach, 102 Fla. 899, 136 Sou. 524.

It will be observed that the real estate and certain personal property being furnishings of certain houses located on the real estate were transferred by one and the same transaction. The contention of the appellant is that because the subject matter of the sale was real and personal property and there was no allocation of the purchase price specifically to cover purchase of real estate and another allocation to specifically cover the purchase of the personal property, the vendor cannot enforce a vendor's lien against

the real estate for the unpaid balance of the purchase price. And there are some respectable authorities sustaining his position. It will be seen, however, by reference to the above cited Florida cases that we have adopted the equitable doctrine of implied vendor's liens based upon equity, justice and good conscience. The vendor's lien is an equity raised and administered by the courts of chancery and it will be enforced or denied between the parties as the exigencies of each particular case may seem to require.

The allegations of the amended bill of complaint are sufficient to show that by the conveyance of the property to Harry Edelson and Anne Edelson, his wife, an estate by the entireties was created in them. It, therefore, follows that if the vendor should sue Harry Edelson at law for the $200.00 balance on the purchase price and should obtain judgment and have execution levied on this particular property, he would probably be met by the contention, whether good or not we are not now called upon to say, that the judgment could not be enforced against this property because it is held by husband and wife as an estate by the entireties.

According to the allegations of the bill of complaint, however, the defendants have received deed to the property, have gone into possession of it, remained in possession and used it without paying the full agreed purchase price and without giving any security for the payment thereof. A court of equity under this condition should require them to do that which in equity and good conscience they are bound to do.

In the case of Doty v. Deposit Building & Loan Ass'n, *et al.*, 20 Ky. Law. Rep. 625, 46 S. W. 219, it was said:

"On behalf of appellant, it is contended that the lot on Fifth Street, in Lexington, being a part of the consideration

for the purchase not only of the Owen County farm, but of the personalty as well, the contract being for the realty and personalty in gross, without any price fixed for either of them separately, either by the contract or the pleadings, a vendor's lien cannot exist upon the realty for any sum which is a part of the purchase price of both the realty and the personalty in gross."

Another contention was made which was not relevant here. Then the Court said:

"The basis of counsel's former contention is correctly stated. By the contract in question, fairly construed, undoubtedly it was agreed to trade the three Lexington lots in gross for the Owen County farm, farming implements, farm products, and live stock in gross, without fixing the price at which any one of the lots, or the farm, or the personal property was taken in the trade. It is earnestly insisted that, the purchase price, being the purchase price for both the farm and the personalty, no lien can arise upon the land for any part of the purchase price, because it is the purchase price in gross of both the land and the personalty. A number of authorities are cited as sustaining this proposition, as well as in support of the contention that no vendor's lien can exist to secure an uncertain or unliquidated demand. Without going through the authorities in detail cited in support of these contentions, we may say that the questions seem to have been decided otherwise by this Court and, as we think, manifestly upon equitable principles. There is no intervening equity of third persons to be considered. It is a question simply between vendor and vendee.

"This record discloses the transfer of a farm and the personalty upon it for a consideration agreed to be paid in other lands. A part of this consideration has been paid. The value of the balance due can be, and has been, judicially

ascertained. And the question presented is whether that part of the property sold which the court can reach, shall be subjected to the payment of the purchase price remaining unpaid, in a proceeding in which the vendor's right to payment has been adjudged, or whether he shall be compelled to await the result of process of execution, or to bring an attachment suit in a court of another county."

And further in the same case it is said:

"By clear implication of the statute, as between vendor and vendee, a lien exists upon the land sold for the purchase price of the land; and it does not seem to be seriously contended, that if it appeared, either from the contract or extrinsic evidence, what price in the trade was put upon the realty and what upon the personalty sold by Taylor to Doty, a lien would not exist upon the land for that proportion of the unpaid purchase money which was applicable to the sale of the land. We might suggest that, in such a case, no application having been made of the partial payment of the consideration of the two varieties of property sold, equity would make an application of the payment for the parties, and the consideration actually paid would be applied to extinguishing the obligation for the personalty. But we think it unnecessary to resort to equitable application of payments in this case.

"Doty obtained title and possession of certain realty and personalty, by one transaction, one contract, and for one consideration. A part of the consideration remains unpaid. What has become of the personalty thus sold does not appear in this record. Manifestly, personal property of the character indicated—easy of transportation and finding ready sale—might be disposed of in such time and manner as to prevent the levy of execution thereon. But, as between vendor and vendee, with no intervening equities, it

would be manifestly unconscientious to permit a party to retain possession of property without the payment of the consideration. The process of the court may be unable to reach and subject the personalty to the payment of that part of the consideration which may be supposed to have been agreed to be paid for the personalty, but it can reach the realty, the sale of which was effected at the same time and by the same agreement. The case seems to us strictly analogous to the case of a sale in gross of two lots of land for an agreed lumping consideration, a part of which is unpaid at the date of conveyance. Undoubtedly, in such case, either lot (no equities intervening) might be subjected to the payment of the unpaid purchase money. Said the New York court in Warren v. Fenn, 28 Barb. 334: 'It has become one of the best established principles of natural equity that estates are to be regarded as unconscientiously obtained when the consideration is not paid.' Again, in Fisk v. Potter, 2 Abb. Dec. 138, the court said of a vendor's lien: 'Its existence depends upon and is controlled by no well settled rules, but, on the contrary, the existence of the lien is generally made to depend upon the peculiar state of facts and circumstances surrounding the particular case; that is, whether or not a case of natural equity is established.' In Thacker v. Booth (Ky.) 6 S. W. 460, Judge Holt, delivering the opinion of the Court, said: 'A lien existed in the nature of a trust, because equity will not allow one to hold the land of another and not pay for it. To do so would be in violation of good conscience and every rule of right.'

"So, in Blevins v. Blankenship (Ky.) 7 S. W. 175, Judge Holt, discussing the change made by the General Statutes in the statute before quoted, said that unless it be stated in the deed what part of the consideration remained unpaid,

the vendor waived his lien as to creditors and purchasers, who were protected because the conveyance gave them no notice that any consideration remained unpaid; and then added: 'The immediate vendee knows, however, whether it has been paid or not; and, if not, the lien upon equitable principles exists in favor of the vendor, although the deed fails to state that any or how much of it is unpaid.'

"We think it is proper to treat this transaction as one sale; and assuming, for the purpose of argument, that no lien exists upon the personalty, even as between vendor and vendee, after possession has been parted with, we see nothing inequitable in subjecting that part of the property sold, which the court can reach, to a vendor's lien for the unpaid purchase money due upon all the property sold in the same transaction."

With the reasoning, logic and conclusions expressed in this opinion we concur and thereupon affirm the order appealed from.

So ordered.

Affirmed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN, J., concur in the opinion and judgment.