118 So.2d 854 (1960)
Claude F. ARMSTRONG, Appellant,
v.
Harry D. BLACKADAR and Olive I. Blackadar, His Wife, Appellees.
No. 1114.
District Court of Appeal of Florida. Second District.
March 4, 1960.
Rehearing Denied April 4, 1960.
*855 Hall, Farnsworth & Rousseau, Tampa, for appellant.
Allen, Dell, Frank & Trinkle, Tampa, for appellees.
FUSSELL, CARROLL W., Associate Judge.
The appellant in this case was plaintiff below in a suit to foreclose a lien for repairs of fire damage to a garage, house and breezeway owned at the time of suit by the appellees. The appellees were the sole defendants in this suit and at the time the contract for repairs was made and during the entire period when the work was being done, appellees were the vendees in an unrecorded contract of purchase with the vendors, Gaetano Riggi and wife, owners. The contract for repairs was made between the appellant and one John Riggi, who was the son of the owners, Gaetano Riggi and wife. John Riggi was living on the premises at the time the contract of repair was made and represented himself to be the owner and promised to pay for the repair work out of fire insurance. Gaetano Riggi came on the property after the repairs were started and remained on it with his son until after the repairs were completed. Gaetano Riggi could not speak good *856 English and made no statements to the plaintiff other than "nice job".
The lower court after hearing the testimony in person dismissed the complaint with prejudice. Basis for this dismissal by the lower court appears from the following statement appearing in the final decree:
"Absent the circumstances of plaintiff having been misled by the owner or of the owner being aware of the false representation of the seller, the court finds that the general rule of law applies to the effect that a lien cannot be established on the basis of the owner's ratification of the acts of the son who, in obtaining the improvements, acted solely for himself as owner and not as agent since it is necessary in order for ratification to exist that the person purport to act as agent of the owner. 57 C.J.S. [Mechanics' Liens § 59], p. 550; 124 A.L.R. 893.
"The fact that the father was present or aware of improvements being made does not subject his interest to a lien or put him in privity with the plaintiff. Arbuthnot v. Moody Co. [115] Fla. [503], 155 So. 840."
A careful review of the record shows very little conflict in the facts. Appellees entered into a contract dated March 22, 1958, to purchase the property from the owner, Gaetano Riggi. This contract contained a clause as follows:
"All fire and smoke damage must be repaired to the full satisfaction of all parties concerned."
Contrary to the recitals contained in the final decree, we fail to find any evidence whatsoever that the appellant knew either of the existence of this contract of sale or that John Riggi was not the owner of the property until some time after all the work had been completed. This contract of repair was made on April 8, work started on April 9 and was completed on April 20. There is evidence that Gaetano Riggi moved onto the property about April 13 and remained until after the work was completed. Appellees admit that he visited the property on April 16 and saw appellant actually making the repairs at that time. He says John Riggi was present also, but denies that Gaetano Riggi was present at that time. The evidence further shows that the property was deeded to the appellees on May 1; that they went into possession on June 5; that notice of lien was filed on June 6 and was served on appellees on June 10; that suit to foreclose was instituted on September 16; all of these dates being in the year 1958.
The only evidence as to any agency existing between John Riggi and Gaetano Riggi, his father, was given by the real estate agent who engineered the sale from Gaetano Riggi to appellees and who also recommended appellant as a capable man to do the repair work and advised him that the job was open. Mr. Roush, the real estate agent, testified as follows:
"Q. Mr. Roush, did you ever have any knowledge of Mr. J. Riggi being commonly known as agent for his father in transactions around there.
"A. Just about everything that was done around there was done * * *. Johnny was representing his father. * * *
"Q. Did John ever tell you he was acting as agent for his father?
"A. He mentioned several times that anything he ever done his father would go along with it. In fact, in the purchase of the property at the time he was instigator of the folks buying the place, and all the way down the line he was go-between man for the old folks." (Emphasis supplied.)
It is strongly contended by appellees that the final decree dismissing the complaint with prejudice was proper and should be affirmed. Appellees maintain that since Gaetano Riggi, the owner, did not order the improvements, and since the improvements were ordered by John Riggi, who *857 represented himself as the owner and not the agent of Gaetano Riggi, that under the provisions of Florida Statutes 84.11, F.S.A. no statutory lien could be claimed:
Florida Statutes 84.11. "When the person contracting for improving real property has no interest as owner in the land, no lien shall attach to the land, * * *."
It is our view that the learned chancellor committed error, for even though appellant could have no statutory lien because of the provisions of Florida Statutes 84.11, F.S.A. with which findings as applied to the facts in the instant case we do not agree, yet, under the facts of this case the appellant is clearly entitled to an equitable lien. The undisputed facts show that the owner and the appellees each knew that this property had been damaged by fire and that the owner was obligated by his contract of sale with the appellees to repair the fire damage to the satisfaction of both the owner and appellees. The owner put his son in possession of the property and, in fact, lived on the property with his son while the latter half of the repairs was being made, and commented to the appellant that it was a "nice job". The appellees knew the work was being done and in fact witnessed part of the work in progress just prior to its completion. Neither the owner nor appellees have ever objected to any part of the work to appellant.
The doctrine of equitable lien has been firmly established in Florida. The court said in the case of Jones v. Carpenter, 90 Fla. 407, 106 So. 127, 129, 43 A.L.R. 1409:
Mr. Justice Terrell, after reviewing a number of cases said:
"From the foregoing it is seen that equitable liens arise from two sources, viz.: (1) A written contract which shows an intention to charge some particular property with a debt or obligation; (2) is declared by a court of equity out of general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings in the particular case."
"(2) In Society of Shakers v. Watson, 6 Cir., 68 F. 730, 15 C.C.A. 632, it was said that the doctrine of equitable liens is one of great importance and of wide application in administering the rights and remedies peculiar to equity jurisprudence. There is perhaps no doctrine which more strikingly shows the difference between the legal and the equitable conceptions of the juridical results which flow from the dealings of men with each other, from their express or implied undertakings."
"(5) In Kilbourne v. Wiley, 124 Mich. 370, 83 N.W. 99, 100, it is said that an equitable lien exists independently of any express agreement and equity enforces it on the principle that a person having gotten an estate of another ought not in conscience to keep it as between them. Included in this class of liens is the vendor's lien. Burdon Central Sugar-Refining Co. v. Ferris Sugar Mfg. Co. (C.C.) 78 F. 417, 421; Field v. Lang, 87 Me. 441, 32 A. 1004."
In Gables Racing Ass'n v. Persky, 148 Fla. 627, 6 So.2d 257, 262, the court said:
"(4, 5) It is difficult if not unwise to attempt a definition of an equitable lien. Difficult because of the variety of circumstances out of which it may arise. Unwise because we must not draw a limit on the scope of equity jurisdiction. This court, however, has recognized equitable liens: Pratt v. Weeks, D.C., 1 F. Supp. 953; International Realty Associates v. McAdoo, 87 Fla. 1, 99 So. 117; Craven v. Hartley, 102 Fla. 282, 135 So. 899; Folsom v. Farmers' Bank of Vero Beach, 102 Fla. 899, 136 So. 524; Jones v. Carpenter, 90 Fla. 407, 106 So. 127, 129, 43 A.L.R. 1409.
* * * * * *

*858 "`Equitable liens are necessarily based on the doctrine of estoppel and usually arise in cases of expenditures by one joint owner on real or other property or in cases where a party innocently and in good faith makes improvements on the property of another.
* * * * * *
"`Where a prejudicial situation results from a wrongful act of a third person, the decision must be against the party whose conduct made possible the wrongful act, either by fraud or negligence.'"
The right to and the granting of an equitable lien is not dependent upon whether or not the plaintiff also has a right to a statutory lien and the courts may grant to the plaintiff an equitable lien, even though the plaintiff might have been entitled to a statutory lien if he had complied with the mandatory provisions of the statute with regard thereto.
In Jones v. Carpenter, supra, the court said:
"(1) Appellant is not within any of the classes enumerated in sections 3496 and 3499 of the R.G.S. of Florida providing for statutory liens in certain cases, and in fact the parties who furnished the materials and performed the labor in question have been compensated out of the funds of the bread company, so any claim of appellant on the basis of a statutory lien, if there be such claim, is without merit; but the doctrine of equitable liens would never have come into existence if it were true that one who claims such a lien must first show a lien at law. Equitable liens become necessary on account of the absence of similar remedies at law. * * *."
In the case of Green v. Putnam, Fla., 93 So.2d 378, 380, the court said:
"(1-3) First, the plaintiff prayed for relief in the alternative. He sought either a mechanic's lien or an equitable lien. Assuming, but not deciding that the plaintiff was not entitled to a mechanic's lien for the reasons cited by the chancellor, the plaintiff might well be entitled to an equitable lien. The chancellor did not decide that plaintiff, on the merits and the evidence, was not entitled to an equitable lien. His order of dismissal in effect was a ruling that the bill of complaint did not state a cause of action. We can not agree for we think such a case may well be a classic example where equity may intervene to impress a lien to prevent inequity or unjust enrichment of one party as against another. And we have held that one who has performed services or furnished materials in the improvement of real property is not limited to proceeding under the mechanics' lien law, but may proceed to establish an equitable lien on the property in question. Palmer v. Edwards, Fla. 1951, 51 So.2d 495."
The case of Tremont Co. v. Paasche, Fla., 81 So.2d 489, 491, is quite similar to the instant case. In this case the court said:
"(1) The bill of complaint, that is, the last amended bill of complaint on which the case was tried, was predicated on the theory that Price, in construction of the cottages, was acting as the agent of Gerbing. The Special Master to whom the case was referred determined that since there was no proof of agency, there being no privity of contract with Gerbing, the liens could not be sustained, and recommended a dismissal of the suit. The trial court did not agree with the Master's findings, sustained exceptions thereto, and held that since construction of the cottages has been required by the contract with Price, as vendee, that since Price was obligated to construct the cottages, the basis for the liens was laid by Gerbing in his contract of sale, and that his interest as owner was properly bound by statutory as well as equitable liens. Equitable liens `may be *859 declared by a court of equity out of a general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings.' Ross v. Gerung, Fla., 69 So.2d 650, 652. * * *.
"(2) Under the ordinary contract of sale, which at most simply permits construction by a vendee, the authorities are to the effect, and this is in accordance with our statute, that the lien of a laborer or materialman in privity only with the vendee does not attach to the interest of the vendor, but where the contract between the vendor and vendee expressly requires construction by the vendee, or where the construction is the gist of the contract, then the courts that have passed upon the question have almost unanimously held that the lien attaches both to the interests of the vendor and the vendee. Some hold that the vendor by such a contract has made the vendee his agent for the purpose of construction. Others that the vendor by the contract has expressly consented to the construction. Others that it would be inequitable to permit the vendor or his vendee under such circumstances to claim the benefits of the improvements but deny the claims of the laborers and materialmen who have provided the improvements pursuant to such a contract.
"In 58 A.L.R. at page 922 where this question is annotated, it is said: `Where in a contract of sale of realty it is expressly provided that the vendee erect buildings or improvements on the premises, or the vendor authorize the erection of such buildings or improvements, the improvements made under such a contract are deemed to be with the owner's consent within the meaning of the statute providing for liens for improvements made with the owner's consent.' And cases there cited.
"In 57 C.J.S. Mechanics' Liens § 71, pp. 573, 574, it is said: `While there is some authority to the contrary, as a general rule, where the contract of purchase expressly requires or obligates the purchaser to erect certain buildings or make certain improvements, the interest of the vendor becomes subject to the liens of persons furnishing labor and materials for the buildings or improvements, even though the vendee forfeits his contract, it being considered that the vendor consents to the improvements or makes the vendee his agent'. * * *.
"Appellants appear to get some comfort out of the case of Arbuthnot v. Moody Co. Inc., 115 Fla. 503, 155 So. 840, but the holding of the Court in that case is:
"`Vendor's mere knowledge that material is being furnished to her contract vendee and failure to protest against it did not render her liable personally or subject her interest in property or that of her grantee to lien for material.'
"so that the facts in that case are not applicable to the facts in this one.
"We find no error in the decree of the lower court awarding the liens against the fee in the property involved."
The principal difference between the Tremont case and this case is that in the Tremont case the vendee was required by the contract to make the improvements, whereas in the instant case the vendor himself was required by the contract to make the repairs. On the question of agency the case of Kimbrell v. Fink, Fla., 78 So.2d 96, 99, is quite similar to the instant case. In this case the court said:
"(2) Moreover, if the complaint stated any facts which would have entitled the plaintiff to relief, it was for the foreclosure of a mechanic's lien under the statute. If, as alleged in the complaint, the Thorntons had knowledge of what was going on, the Kimbrells were simply their agents and the construction company was entitled to a *860 lien under the statute (Chapter 84, supra) regardless of the fact that actual title was not in the Kimbrells. `If the owner of lands stands by and allows another who is in possession of the land to represent that he is the owner, and on the faith of such representation obtain materials for the construction of a house upon the land, the owner will not be allowed to reap the benefits of the fraud he has permitted but his property will be subjected to a lien for the materials so obtained. And so, if the owner stands by and induces a mechanic or materialman to give credit to another as the owner, he cannot defeat the lien therefor by claiming ownership'. 2 Jones on Liens (3rd Ed. 1914) p. 450, Sec. 1256. In addition, it clearly appears that the construction company by filing its claim of lien clearly intended to pursue its remedy and claim its lien under the mechanic's lien law, absent which, it would have had no lien. The case must therefore be disposed of on that theory."
In the instant case the owner was obligated by his contract to have this particular repair work done. His son had acted as his agent in other matters and was living on this particular property at the time the contract and repairs was entered into and made. The owner himself lived on the premises during the latter half of the work and told the appellant that it was a "nice job". These facts, in our opinion, warrant the granting of an equitable lien in favor of appellant against the premises. Appellees have no cause to complain because, under their contract, the owner was required to have this work done. Appellees visited the premises and saw appellant engaged in the performance of this work. The lien was filed and served on appellees within the 90-day period after the completion of the work. The duty of the court in a case of this kind, we feel, is correctly expressed in the case of Ross v. Gerung, Fla., 69 So.2d 650, 652, where the court said:
"From the record in the case at bar, it is clear that plaintiff's labor and materials have been used to augment or improve the property sought to be charged, and the evidence discloses that members of the church congregation at large assisted on the project and were well acquainted with the extent and nature of the work required and authorized by the defendants on their behalf. While the allegation was made in the complaint `that plaintiff has complied with all the requirements of Chapter 84, Florida Statutes (F.S.A.), and is entitled to and has a lien on the real property * * * for said $1,351.62 and interest, and this action is brought for the enforcement thereof', the prayer of the bill was simply `that the plaintiff be decreed to have a lien on the real property * * * to secure the payment' of the amount found to be due for work and materials furnished.
"Our conclusion is that inasmuch as the complaint alleged sufficient facts to show a cause of action for an equitable lien, the chancellor ruled correctly, under this prayer, and under the prayer for general relief that is implicitly written into every complaint filed under our equity practice, Equity Rule 28, in granting to the plaintiff the equitable relief supported by the allegations and proof in the cause, even though some mention was made in the complaint of the right to a form of statutory relief that was not grantable because of the inability of the defendants to make a legally binding contract for and on behalf of the church society for which they were acting."
As previously indicated and in order that there be no misunderstanding, it is also our view that the plaintiff was definitely entitled to a statutory lien under the facts of this case. We feel that the lower court was in error in basing its decision on the principle of law that it is necessary in order for ratification to exist that the principal *861 purport to act as agent of the owner. This law has no application unless there is not an agency relationship in fact or unless an agent exceeds his real or apparent authority. See 57 C.J.S. Mechanics' Liens § 59, p. 550; Annotation, 124 A.L.R. 893, and 2 Am.Jur., Agency, Sec. 208, page 165. The law of ratification as it concerns agency applies to unauthorized acts.
If there is in fact an agency relationship and if the agent acts within the scope of his authority, then no ratification by the principal is necessary. 2 Am.Jur., Agency, Sec. 208, p. 165. The fact that an agent acts in his own name without disclosing his principal does not preclude liability on the part of the principal when he is discovered by the third party. An undisclosed principal may be held liable for acts done in his behalf and may be sued thereon, although the third party might have to elect whether to proceed against the agent or the undisclosed principal. See 2 Am.Jur., Agency, sections 392 and 393, and following sections, p. 308.
Florida Statutes, § 84.11, F.S.A. does not preclude an owner of property from contracting through an agent for improvements to be made on his property so as to subject the property to a lien whether the agent is disclosed or undisclosed.
We definitely feel that there was amply sufficient evidence in the instant case to establish agency between the father and son, and there was no evidence of any nature whatsoever refuting this agency relationship. Neither the owner, Gaetano Riggi, nor the son, John Riggi, appeared as witnesses, nor was there any evidence offered by the defendants whatsoever denying this relationship.
As stated in the beginning, the father-owner was obligated to make the repairs; the son was placed in charge of the premises; the real estate agent testified that the son acted as agent for his father in practically all other transactions in regard to this property; the father-owner resided on the premises with his son during the period of time the repair work was being performed by the plaintiff; he saw the labor being done and commented to the plaintiff that it was a nice job. There is no evidence of any work being performed by the plaintiff beyond that needed to make the actual repairs which the owner was obligated to do.
Under these uncontradicted facts, and with no evidence being offered by the defendants contradicting or refuting these facts in any degree, we feel that the agency of the son for the father in performing this work was definitely established.
With this finding of fact, the law as above cited became applicable and the plaintiff was entitled as well to a statutory lien.
A similar situation was presented in the case of Dewing v. Davis, Fla.App., 117 So.2d 747, where the matter of both an equitable lien and a statutory lien was involved. The writer of this opinion feels that the opinion of Judge Kanner of this court in the Dewing case is most enlightening in reviewing the subject of equitable liens in Florida.
The plaintiff prayed in the instant case that the court enter an order decreeing that the defendants are indebted to the plaintiff in the sum of $900.00 and require them to pay said amount within a short time to be fixed by the decree, and that in the event of failure that the real property described therein should be sold to satisfy said decree. We feel that the complaint, the prayer and the evidence in this case was sufficient and that the lower court should have entered its decree for the appellant.
This case is, therefore, reversed with direction that a decree for the appellant be entered in accordance with this opinion.
Reversed.
KANNER, Acting Chief Judge, and SHANNON, J., concur.