299 So.2d 595 (1974)
In re ESTATE OF Adrian Clyde HUMPHREYS, Jr., Deceased.
No. 44675.
Supreme Court of Florida.
June 26, 1974.
Rehearing Denied September 24, 1974.
*596 Curtin R. Coleman of Coleman, Leonard, Morrison & Riddle, Fort Lauderdale, for appellants.
Harry G. Carratt of Morgan, Carratt & O'Connor, Fort Lauderdale, for Harry G. Carratt.
Elizabeth Athanasakos, Fort Lauderdale, for Ellen M. Coxeter Humphreys.
McCAIN, Justice.
This case is before the Court on direct appeal from an Order entered in the Circuit Court in Broward County, Florida, upholding the constitutionality of the Florida Dower Statutes in force in 1972, to-wit: Florida Statutes §§ 731.34-731.36 and 733.09-733.14 (1971), F.S.A. We have jurisdiction pursuant to Article V, Section 3(b)(1), Florida Constitution, F.S.A.
The question raised for our review is whether an ex-wife may challenge the constitutional validity of the dower statutes alleging that they invidiously discriminated against males. And, if so, then whether the statutes which were in effect at the time of the decedent's death, do in fact discriminate against males.[1]
The facts of this case are that the deceased married his first wife in 1942, and two children were born of the marriage. Some time in 1967, irreconcilable differences arose between the co-partners and they obtained a divorce; pursuant to which a separation agreement was entered into which provided for monthly payments and other financial benefits payable to the first wife.
The first wife obtained a Final Money Judgment on January 31, 1972 which judgment also dissolved the marriage on the Counterclaim of the now deceased husband. Thereafter the deceased remarried and later executed a will to the exclusion of his first wife, but including his second wife, his children from the prior marriage and his mother.
The decedent died on September 25, 1972, leaving his second wife as the surviving widow, and his first wife as a judgment creditor.
The decedent's will, dated July 25, 1972, was duly admitted to probate on September 27, 1972. The first wife filed her Statement of Claim in January, 1973. When it became clear that very little would be left in the estate after the satisfaction of the first wife's claim, the second wife filed her Election to Take Dower.
*597 The first wife then filed her Objections to the Election to Take Dower and alleged inter alia that:
"B. The Florida dower statutes under which the instant election to take dower was made are unconstitutional, being in violation of the Constitutions of both the United States and the State of Florida, including the failure to provide equal protection under the law and allowing for invidious discrimination against members of the male sex."
In his Order dated October 25, 1973, the Circuit Judge ruled that:
"2. That the petitioners have the right and are the proper parties to question the constitutionality of the dower statutes.
"3. That the dower statutes do not clearly violate organic law; therefore, the statutes are declared to be constitutional."
From this Order, timely Notice of Appeal was filed.
Interesting logic is raised by this appeal. The appellant asserts that the operation of the dower statutes discriminates against males. Yet to so find in this case would defeat the intent of the male testator. He seeks, by virtue of his will, to have his estate divided between his second wife and the remainder of his family. He is succored in his intent by the operation of the dower statutes which have the effect of protecting his widow in the event there are insufficient funds available after the judgment and other creditors are satisfied. The first wife, who then stands in the position of a judgment creditor, attempts to destroy the dower rights alleging that they are discriminatory against males.
In order to properly review a constitutional challenge the party raising the issue must have the requisite interest.[2] While the first wife, as a judgment creditor, may suffer from the operation of the dower statutes as they existed, their alleged discrimination is in no way directed against her. It is a well settled principle of constitutional litigation that a person challenging the discrimination must be adversely affected by the statute's operation.
"... [I]n all instances when the constitutionality of a law is attacked, such an issue will not be ruled on except at the suit of a person affected adversely by the alleged invalid aspect of the law. [Citations]."[3]
Therefore, the proper party to raise the issue of discriminatory operation of the dower statutes must of necessity have been a male widower who elected to take dower in his deceased wife's estate and was denied that right by the very operation of the statutes, as they at one time existed.
Since the first wife is not discriminated against adversely, she does not have standing to raise the constitutional challenge. All of the cases cited by the appellant deal with fact situations where, by operation of statutes, females are deprived of equal protection and the female raises the issue of discrimination, and are thus clearly distinguishable.
Therefore since the appellant does not have the requisite standing, the Circuit Judge erred in considering and passing upon the constitutionality of the statutes, and we do not, by this Opinion, in any way deal with their constitutionality.
This cause is hereby remanded with directions to the Court below to vacate its Order entered October 25, 1973, and to proceed consistently with the view expressed herein.
It is so ordered.
*598 ADKINS, C.J., and BOYD and DEKLE, JJ., concur.
ERVIN, J., dissents with opinion.
ROBERTS and OVERTON, JJ., dissent and concur with ERVIN, J.
ERVIN, Justice (dissenting):
The constitutionality of Section 731.34, F.S. 1971, a dower statute enacted in apparent conformity with Section 5, Article X, 1968 Florida Constitution, is challenged in this litigation insofar as it applies to the facts of this case.
Said section provides in part that a widow who is dissatisfied with the portion of her husband's estate under the law of descent or the husband's will may elect to take dower in the estate, which shall be one third in fee simple of his real property in which she has not relinquished her dower, and one third part absolutely of the personal property owned by him at death, and that in all cases such dower shall be free from liability for all debts of her deceased husband.
The essential question as to the facts here is whether dower elected pursuant to Section 731.34 by the second Mrs. Humphreys, i.e., Ellen M. Coxeter Humphreys, can constitutionally take complete precedence over a prior divorce settlement agreement between Adrian Clyde Humphreys, Jr. and his divorced first wife, Avis J. Humphreys.
The divorce settlement agreement was executed in Washington, D.C., between Adrian Clyde Humphreys, Jr. and his wife, Avis J. Humphreys, on January 11, 1967. Thereafter in 1972 it was approved by the Circuit Court contemporaneously with the divorce granted to the two by the Court.
The agreement provided, inter alia, that the divorced wife would occupy the former home of the parties in Washington, D.C. with their two children (Adrian C. Humphreys, III, and Diane Humphreys) and that the divorced husband would pay the divorced wife the sum of $700 per month for the support and maintenance of the wife and children. The husband agreed to pay the taxes and insurance on the home and amortize the mortgage thereon. The agreement expressly provides:
"... The Husband shall retain his equity in the home but if the Wife should decide to remarry or if she should no longer wish to live there each of the parties shall have the mutual option to buy out the other's interest in the property at the then going market price to be established by the First Federal Savings and Loan Association of Washington, D.C. In the event that neither party wishes to live there, the property will be sold and the proceeds from the sale thereby will be divided equally between them. The Husband shall continue to pay the Seven Hundred ($700) Dollars per month to the Wife during her lifetime or until she remarries at which time the payments shall cease.
"6. The Husband shall forthwith make and keep in full force and effect until his death a will bequeathing and devising to the children, Adrian C. Humphreys III and Diane Humphreys, not less than one-half of his entire estate, and shall bequeath and devise in said will the sum of Twenty-five thousand ($25,000.00) Dollars to his Wife, Avis J. Humphreys, and also his interest in their home at 6691 MacArthur Boulevard, Washington 16, D.C. (Montgomery County, Maryland). The Husband shall have the right to change such will in the event other children are born to him to provide that such children shall share `per capita' in his estate but cannot change his will with regard to the provisions made for his Wife, Avis J. Humphreys.
* * * * * *
"13. All of the covenants, promises, stipulations, agreements and provision [sic] herein contained shall apply to, bind and be obligatory upon the heirs, *599 executors, administrators, personal representatives and assigns of the Husband and Wife, whether so expressed or not."
Adrian Clyde Humphreys, Jr. died testate on September 25, 1972, leaving his second wife, Ellen M. Coxeter Humphreys, as surviving widow, and the two children. (The two children have now attained their majority.) His first wife, Avis J. Humphreys, had recovered judgment against him on January 31, 1972 for arrearage amounts due her under the settlement agreement. Twenty-two thousand and fifty dollars, plus six per cent per annum interest thereon remains unpaid. His first wife also claims attorneys' fees in both the circuit and appellate courts for services rendered her by her counsel in said courts in connection with the recovery of said judgment and court costs. No provision of any kind was made for the first wife in the will of Adrian Clyde Humphreys, Jr., despite his agreements for bequests and devises to her as recited in the settlement agreement.
The first wife duly filed claim in the Circuit Court Probate Division of Broward County, Florida, where Humphreys' will was probated, for said amounts referred to in the preceding paragraph and to enforce the agreement to bequeath her $25,000 as provided in the settlement agreement.
After certain specific bequests were made to others, testator Humphreys, Jr. left the rest and residue of his estate in equal shares to his second wife and the two children.
After the first wife filed her claims against her former husband's estate, the second wife as surviving spouse elected to take dower.
It is my view that vis-a-vis a first divorced wife with whom a valid divorce settlement agreement has been made and approved by the Circuit Court and a second wife electing dower, the dower election must reciprocally yield in its impact upon a deceased husband's estate to the extent necessary to do equity between the two. The Legislature has no authority by a dower statute to arbitrarily curtail pro tanto a priorly vested divorce settlement and give full priority of dower rights thereover. The situation is different as to other heirs and creditors of the deceased husband and their claims against his estate, but the two women stand on different footing. They represent a specific class within the class of persons who have claims upon the estate.
Section 61.14, F.S. 1969, F.S.A., which was in effect at the time the property settlement agreement was entered into recognizes alimony agreements subject to approval by the divorce court. The same can be made together with property settlements and may thereafter be increased or decreased as "the circumstances of the parties or the financial ability of the husband has changed since the execution of such agreement or the rendition of the order." And under the authority of First National Bank of St. Petersburg v. Ford, Fla. 1973, 283 So.2d 342, such agreements with court approval can be carried over and continued as a charge against the husband's estate, subject to certain limitations.
I do not think the question of the failure of the Legislature to contemporaneously and equally establish and regulate curtesy for widowers is material to a decision in this case. Rather, the impairment of a contract contrary to Section 10, Article I, Florida Constitution, and Section 10, Article I, United States Constitution, is the true consideration. This point is fundamental in this case and we should review it sua sponte to do justice.
Section 5, Article X, 1968 Florida Constitution, is a limitation upon and not a grant of legislative power. It provides a legislative limitation that there shall be no distinction between married women and married men in holding and disposing their real and personal property coupled with a proviso that "dower or curtesy may be established and regulated by law." (Emphasis *600 supplied.) The proviso is not a limitation on the Legislature and may as well have been left out of the Constitution. The Legislature already had inherent power to establish or regulate dower or curtesy provided its enactments conform to governing provisions of the State and Federal constitutions. But it is not mandatory that if it provides for dower it must also provide for curtesy. Cf. Shevin v. Kahn, Fla. 1973, 273 So.2d 72, aff'd Kahn v. Shevin, 1974, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189.
The situation presented here as between the first and second wives and their conflicting claims against Humphreys' estate to be constitutionally resolved, requires application of those equitable principles which are necessary to do justice, prevent unfairness and avoid the arbitrariness which general statutes in their uniform application sometimes promote in particular factual circumstances. Analogous reference is made to general principles of probate law, to the law relating to the granting of relief by specific performance of contracts to bequeath or devise property but in which good conscience and natural justice must accord (57 Am.Jur., Wills, § 201); and to the law relating to the pretermission of heirs where there is a legal duty that they be provided for; and to the law relating to divorce, divorce settlements, and alimony.
The cause should be reversed with direction that the probate court do equity as between the first and second wives in keeping with good conscience and natural justice. The present status and the needs of the two former wives must be carefully evaluated together and correlated in terms of the extent, nature and justice of their claims; the one statutory (F.S. § 731.34, F.S.A.); the other pursuant to agreement which had authority of statute for its making (§ 61.14, F.S. 1969, F.S.A.). Moreover, they must be considered in keeping with the ability of the deceased husband's estate to satisfy the respective claims.
The equity court is peculiarly fitted to relax the harshness or overreaching effect of either the dower charge or the divorce settlement charge against the Humphreys estate. That is the historic role of the equity court.
No better reference to analogous law to fit the practicalities, rights and realities of the contending parties may be made than to the wise and far-reaching thinking of Justice Roberts writing for the majority in First National Bank of St. Petersburg v. Ford, supra. He wrote therein:
"... Where an elderly husband (or wife), after decades of marriage, divorces his elderly wife (or husband) who has passed all opportunity for employment and/or has falled upon ill health, and the parties have not expressly agreed to allow alimony to continue into his (or her) estate, strict application of Aldrich [Aldrich v. Aldrich, 163 So.2d 276 (Fla. 1964)] would result in the sudden cutting off of the infirmed spouse's sole means of support. Even though the husband (or wife) leaves a vast estate, she (or he) would be left penniless. Florida Statutes, Section 61.08(2) allows the trial judge to consider just such a situation and to alleviate the hardship that could result and to do equity and justice between the parties."
The rights of neither party should be derogated by unreasonable application of conflicting statutes which in these circumstances must yield in the light of constitutional principles. The unusual circumstances of the instant case should be treated separately and distinctly from the usual dower or divorce settlement case in order that equity and natural justice may prevail.
I would reverse the judgment below for further proceedings in accordance with the views herein expressed.
ROBERTS and OVERTON, JJ., concur.
NOTES
[1] A widow's right to elect dower is controlled by the dower statutes as they existed at the time of the death of the husband. In re: Rogers Estate, 171 So.2d 428 (Fla.App. 1965). Although the Florida Dower Statutes were amended by subsequent action of the Legislature, Chapter 73-107, Laws of Florida (1973), to allow a widower as well as a widow to elect to take dower, the parties before the courts in this action are governed by the existing law in effect prior to the legislative change.
[2] State v. Turner, 224 So.2d 290 (Fla. 1969.)
[3] Cooper v. Sinclair, 66 So.2d 702, 703 (Fla. 1953). See also: State ex rel. McClure v. Sullivan, 43 So.2d 438 (Fla. 1949); Henderson v. Antonacci, 62 So.2d 5 (Fla. 1952); Acme Moving & Storage Co. of Jacksonville v. Mason, 167 So.2d 555 (Fla. 1964); and City of Cape Canaveral v. Chesnick, 227 So.2d 502 (Fla.App. 1969).