364 So.2d 742 (1978)
In re ESTATE OF Samuel DONNER, Deceased.
Larna Katz Donner, Appellant,
v.
Paul B. Anton et al., Appellees.
Ruth Jean Donner, Appellant,
v.
Paul B. Anton et al., Appellees.
Nos. 76-1919, 76-2233.
District Court of Appeal of Florida, Third District.
October 3, 1978.
Rehearing Denied November 22, 1978.
*744 Broad & Cassel and Lewis I. Horwitz, Bay Harbor Island, for Larna Katz Donner.
Heller & Kaplan, Robert Golden and Daniel Heller, Miami, for Ruth Jean Donner.
Abrams, Anton, Robbins, Resnick & Schneider and David L. Kline, Hollywood, Amy Linda Steele, North Miami Beach, for appellees.
Before HAVERFIELD, C.J., and HUBBART and KEHOE, JJ.
KEHOE, Judge.
This is a consolidated appeal taken from a final judgment entered after a non-jury trial conducted before the court below. The final judgment upheld Ruth Jean Donner's (appellant in appeal No. 76-2233, appellee in appeal No. 76-1919) claim to a $1,000,000 tax-free bequest made pursuant to a settlement agreement entered into with her former husband, Samuel Donner, and implemented by the provisions of his will probated after his death. The final judgment under review also imposed an "equitable lien" in favor of Ruth Jean Donner's $1,000,000 bequest upon Larna Katz Donner (appellant in appeal No. 76-1919, appellee in appeal No. 76-2233), Samuel Donner's third wife and widow, to the extent that Larna Katz Donner's dower claim reduces the amount of Ruth Jean Donner's bequest.
This action was precipitated by the death of Samuel Donner on January 25, 1973. He died leaving behind an estate valued in excess of $7 million dollars. A will contest ensued involving numerous parties and a complicated probate proceeding below. In addition to the litigation surrounding the probate of the will itself, several other related lawsuits arose out of peripheral matters concerning the administration and distribution of the estate. Multiple appeals have been taken from the various orders entered by the court below during the probate of the estate and in disposing of the related matters. This consolidated appeal is taken from a final judgment disposing of one such related matter connected with, but not a part of, the probate of the Donner Estate. Facts pertinent to this separate consolidated appeal are more fully explained below.[1]
This action was originally brought by Ruth Jean Donner for damages and other equitable relief allegedly incurred for breach of contract and for fraud. The defendants below were the executors of the Donner Estate (the estate) and Samuel Donner's widow, Larna Katz Donner [for the sake of brevity the parties and the *745 decedent will be referred to as Ruth, Larna and Sam].
After a non-jury trial on the merits, the court below entered a final judgment containing extensive findings of fact and ordered inter alia as follows:
(1) That Ruth recover from the Donner Estate the sum of $452,210.74 in satisfaction of her claims against the estate;
(2) That Ruth recover from the estate such further sum as shall be in an amount equal to the deficiency, if any, in full satisfaction of the $1,000,000 bequest provided for by Sam's will pursuant to the terms of his settlement agreement with Ruth;
(3) That Ruth recover from Larna by way of equitable lien upon the dower award due to Larna an amount equal to the sum that Larna's dower claim reduces Ruth's $1,000,000 bequest, should the estate prove unable to satisfy her (Ruth's) claim in full.
Both Ruth and Larna appeal the final judgment.[2] Ruth appeals the entire judgment contending that: (1) the trial court failed to set aside her divorce from Samuel Donner on the grounds of fraud and declare her to be Sam's true widow; (2) the trial court erred by requiring her to pay her own attorneys' fees and costs; and (3) the trial court erred by relieving the estate from any obligation to pay her attorneys' fees in these proceedings to enforce the final judgment dissolving her marriage to Sam. Larna only appeals from that part of the final judgment which provided for an equitable lien against her dower. Both of these appeals have been consolidated for all appellate purposes.
We reverse in part and hold: (1) that Larna is Samuel Donner's lawful widow; (2) that she is entitled to her full dower right as provided by law at the time she elected to take dower; (3) that the settlement agreement between Ruth and Sam was invalid insofar as it purported to require Larna to waive her right to dower; and (4) that the equitable lien imposed upon Larna's dower in favor of Ruth is invalid and of no effect.
The facts germane to this appeal may be briefly summarized as follows:[3]
Sam died at sea aboard a cruise ship while honeymooning with his new bride, Larna. He died testate leaving behind a will and a codicil thereto, and several interested parties with sizable claims against the estate. A petition for probate of his estate was filed soon thereafter in accordance with the provisions of the Florida Probate Code then in effect.[4] At his death, Sam left behind a sizable estate conservatively valued in excess of $7 million dollars and consisting largely of a complicated portfolio of corporate and personal interests in real estate and various other business ventures. Sam was a large scale developer who operated through various corporate and partnership entities to construct numerous large condominium projects in South Florida. Through his own efforts and business acumen, he acquired sizable financial interests in a number of these developed properties. These interests now comprise the bulk of his estate. The estate has since been continuously involved in litigation.[5]
*746 Prior to his marriage to Larna in 1972, Sam had been married to Ruth Donner for approximately 13 years. Ruth was Sam's second wife.[6] Ruth and Sam separated in September 1971, and a final judgment dissolving their marriage was entered on October 10, 1972. This final judgment dissolved the existing marriage and ratified a settlement agreement previously entered into between Sam and Ruth on August 4, 1972, whereby Sam promised to leave Ruth a $1 million tax-free bequest in his will, and obligated him to enter into an antenuptial agreement with any future woman he might marry in which his future wife would waive her dower to the extent it might interfere with Ruth's bequest.[7]
Sam and Larna began dating even before his separation from Ruth in 1971. They had met years before and had resumed their acquaintance sometime after Larna, by then divorced, began working as a rental agent with Galahad Hall Associates, a Donner enterprise. As early as 1968 Ruth accused Larna of alienating Sam's affection for her. The trial court found as fact that at the time of the execution of the settlement agreement of August 4, 1972, Sam and Larna were seeing each other on almost a daily basis and the dissolution of the marriage sought by Sam was for the purpose of marrying Larna.
On October 30, 1972, some 20 days after the final judgment dissolving his marriage to Ruth and notwithstanding the contrary provisions of the settlement agreement of August 4, 1972, Sam entered into an antenuptial agreement with Larna wherein it was provided:
"... [T]hat LARNA does not release or relinquish any and all claims and rights of any kind, nature and description that she may acquire by reason of the marriage in SAM'S property or estate, under the present or future laws of the State of Florida or any jurisdiction, including, but without limitation: (a) the right to elect to take against any present or future Last Will and Testament or Codicil of the other party... ."
Sam married Larna on December 22, 1972 in Ft. Lauderdale. Thirty-four days later he died of a heart attack while vacationing aboard a cruise ship. In his will Sam left the promised one million dollars to Ruth.[8] By a codicil to his will executed after his marriage on January 4, 1973, Sam made his then wife, Larna, his sole residual beneficiary.[9] Later, during the probate of the estate, Larna chose not to take under the *747 will and filed her election to take dower pursuant to Section 731.35, Florida Statutes (1971).[10]
Ruth filed this lawsuit against Larna and the estate seeking equitable relief for damages sustained by her by virtue of the alleged breach of her settlement agreement with Sam. She charged that Sam and Larna conspired to fraudulently deprive her of her expectancy under that agreement by entering immediately into an antenuptial agreement expressly contrary to the provisions of the settlement agreement. Ruth further contended that Sam's marriage to Larna was so permeated by this fraud that it was a nullity and that she should be declared Sam's lawful widow.
The trial court, in its lengthy final judgment, made certain factual findings and legal conclusions pertinent to the issues facing this court. It found:
(1) That at the time of the execution of the antenuptial agreement between Larna and Sam, Larna knew that a property settlement agreement had been entered into between Sam and Ruth [no specific finding was made that Larna had actual knowledge of the contents of that agreement];
(2) By virtue of her previous personal experience,[11] Larna was charged with knowledge of the provisions of Sam's divorce decree and its accompanying settlement agreement with Ruth;
(3) That Sam, willfully, knowingly and with the conscious intent to do so, breached his settlement agreement with Ruth by knowingly entering into an antenuptial agreement with Larna only days later that was in direct contradiction of, and in violation of, the settlement agreement;
(4) That Sam's execution of the antenuptial agreement, despite the clear provisions of the settlement agreement to the contrary, was sufficient to constitute a fraud upon Ruth;
(5) That Larna, by virtue of her election to take dower, joined in the fraud perpetrated upon Ruth.
The trial court concluded that Ruth was entitled to judgment for the damages she sustained by Sam's willful breach of the settlement agreement and by the fraudulent actions of Sam and Larna entering into an antenuptial agreement which had as its specific purpose the reaffirmation of Larna's dower right notwithstanding the contrary provisions in the settlement agreement. The trial court ruled that Ruth was entitled to her $1 million tax-free bequest out of the proceeds of the estate. Should Larna's election to take dower diminish the assets of the estate to the extent that Ruth would not receive the full amount of her bequest, then the court imposed an equitable lien on Larna's dower claim to the extent of any deficiency.[12]

*748 I.
At the outset of our discussion, we acknowledge the assiduous efforts of the able trial judge in providing extensive findings of fact to assist us in our review of the numerous issues on appeal. These findings of fact come to this court clothed with the presumption of correctness and will not be disturbed upon appellate review absent a showing that they are clearly erroneous or totally without any substantial evidence in their support. Department of Transportation v. Morehouse, 350 So.2d 529 (Fla. 3d DCA 1977); Courshon v. Fontainebleau Hotel Corp., 307 So.2d 901 (Fla. 3d DCA 1975). We are not however bound by the trial court's legal conclusions where those conclusions conflict with established law. Holland v. Gross, 89 So.2d 255 (Fla. 1956).
"A finding of fact by the trial court in a non-jury case will not be set aside on review unless there is no substantial evidence to sustain it, unless it is clearly against the weight of the evidence, or unless it was induced by an erroneous view of the law. A finding which rests on conclusions drawn from undisputed evidence, rather than on conflicts in the testimony, does not carry with it the same conclusiveness as a finding resting on probative disputed facts, but is rather in the nature of a legal conclusion. 3 Am.Jur. 471. When the appellate court is convinced that an express or inferential finding of the trial court is without support of any substantial evidence, is clearly against the weight of the evidence or that the trial court has misapplied the law to the established facts, then the decision is `clearly erroneous' and the appellate court will reverse because the trial court has `failed to give legal effect to the evidence' in its entirety." Id. at 258.
In light of these controlling principles of law, we proceed to carefully examine the final judgment rendered below. The first issue requiring resolution is the trial court's conclusion that Larna joined with the decedent to perpetrate a fraud upon Ruth. The trial court held that Larna, by her election to take dower, "joined in" with Sam to defraud Ruth of her (Ruth's) promised $1,000,000 bequest. Therefore, as a result of this allegedly fraudulent conduct engaged in by Sam and Larna, the trial court ruled that Ruth was entitled to a judgment sufficient to uphold her promised bequest. Larna challenges on appeal the conclusion that she joined in any fraudulent conduct against Ruth. She contends that she never had knowledge of the contents of the settlement agreement and cannot be "charged with knowledge" of the restrictions imposed upon her dower rights by that agreement since (1) she had no actual knowledge of the contents of the agreement; (2) she had no duty imposed upon her by law to ascertain the provisions of the agreement; and (3) in any event, no fraud was established by the facts adduced below. Finally, she contends that even if there was fraud on Sam's part, the record is not sufficient to prove the joinder by Larna in such fraud. We agree.
To establish fraud attributable to Larna under the circumstances of this case requires: (1) a showing that Ruth was defrauded by Sam's willful breach of the settlement agreement; (2) a showing that Larna was aware of the restrictions imposed upon her by that agreement and considered herself to be bound by it; and (3) a showing that Larna intended to join in to defraud Ruth of her promised bequest. Our review of the record convinces us that all of these essential elements were missing and that therefore the trial court erred when it concluded that Larna joined in with Sam's alleged fraud upon Ruth.
*749 In the first place, we are not persuaded that it was ever conclusively established below that any fraud was perpetrated upon Ruth by Larna or by Sam. The trial court based its conclusion that Sam defrauded Ruth by his willful and knowing breach of the settlement agreement and his subsequent joinder in the antenuptial agreement shortly thereafter. This portion of the final judgment is open to serious challenge.
Sam may have never intended to abide by his agreement with Ruth. The trial court found that he consciously intended to breach the settlement agreement at his earliest opportunity. That may be so but a willful breach of contract alone, without more, is insufficient in law to constitute fraud:
"... [T]he fraudulent breach of a contract does not give rise to an action for fraud, and therefore where the only fraud charged relates to a breach of the contract, and not to its inducement or making, no action for fraud exists." 37 Am.Jur.2d Fraud & Deceit § 21 (1968).
The trial court did not find fraud in the inducement nor would the record support such a finding.[13] Moreover, had Sam promised Ruth that he would require his future spouse to waive dower as an inducement to entice her to accept the settlement agreement, this still would not amount to fraud in the legal sense. Harrington v. Rutherford, 38 Fla. 321, 21 So. 283 (1896); Brod v. Jernigan, 188 So.2d 575 (Fla. 2d DCA 1966). But see Ashland Oil, Inc. v. Pickard, 269 So.2d 714 (Fla. 3d DCA 1972).
Further, Sam's breach of contract cannot be "passed on" to Larna regardless of his culpability. Larna was not a party to the settlement agreement and had no contractual relationship whatsoever with Ruth. She made no promises to Ruth or engaged in any misrepresentations. Ordinarily, a contract cannot bind one who is not a party thereto since to create a valid contract there must be reciprocal assent to a certain and definite proposition. Strong & Trowbridge Co. v. H. Baars & Co., 60 Fla. 253, 54 So. 92 (1910). Sam's willful breach of contract alone is not sufficient to pin culpability upon Larna. Accordingly, Larna cannot be said to have breached the settlement agreement with Ruth.
We next turn to the issue of whether Larna was aware of the restrictions imposed upon her by the settlement agreement. Initially we note that the trial court never found that Larna had actual knowledge of the provisions of the settlement agreement. The evidence presented below was never conclusive on that point.[14] Instead, the trial court found that Larna was "charged with knowledge" of the provisions of that agreement. The trial court arrived at this conclusion based upon the following findings of ultimate fact: (1) Larna knew that the settlement agreement had been entered into by Sam with Ruth; (2) the divorce decree and settlement agreement *750 were matters of public record available for her perusal; and (3) Larna's previous personal experience in entering into a property settlement agreement with her former husband should have put her on notice of the band should have put her on notice of the provisions of the Sam-Ruth agreement. Since Larna was "charged with knowledge" of the settlement agreement, she was, under the reasoning employed by the trial court, by implication, bound by the provisions of that agreement. The settlement agreement thus obligated Larna to waive dower in Sam's estate as a condition of marriage, and the trial court concluded that it was valid and enforceable.
The trial court fell into error when it concluded that Larna was "charged with knowledge" of the contents of the settlement agreement. Neither the facts as found in the final judgment nor our careful review of the record discloses evidence sufficient to justify this legal conclusion. Larna was not charged with knowledge of the provisions of the settlement agreement since she had no actual knowledge of that agreement and no duty to inform herself of its contents. Such a duty, had it existed, may have been sufficient to constitute culpable negligent ignorance equivalent in law to actual knowledge. The trial court however reached its conclusion based upon its determination that Larna had such a duty to inquire as to the contents of the settlement agreement and that she breached this duty by intentionally abstaining from all inquiry into the provisions of that agreement in order to avoid notice of its restrictions upon her dower rights. As authority for its conclusion, the trial court cited 23 Fla.Jur. Notice and Notices § 6 (1959), as follows:
"... [N]egligent ignorance has the same effect in law as actual knowledge. And wherever facts put a person on inquiry notice will be imputed to him if it is made to appear that he has designedly abstained from inquiry for the purpose of avoiding notice. A person has no right to shut his eyes or ears to information, and then say that he has no notice. The law will not permit him to remain willfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry, when the means of knowledge is at hand. If he has either actual or constructive information and notice sufficient to put him on inquiry, he is bound, for his own protection, to make that inquiry which such information or notice appears to direct should be made. If he disregards that information or notice which is sufficient to put him on inquiry and fails to inquire and to learn that which he might reasonably be expected to learn upon making such inquiry, then he must suffer the consequences of his neglect." (footnotes omitted)
We have no disagreement with the law quoted above. The trial court, however, omitted the initial, highly relevant, portion of the quotation from Florida Jurisprudence which, when included, materially influences the expression of the law on point:
"Means of knowledge, with the duty of using them, are in equity equivalent to knowledge itself. Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge... ." (emphasis supplied).
Even assuming that Larna's ignorance of the prior agreement was negligent, nowhere in the proceeding below or here on appeal has there been an assertion that Larna had any duty to inquire as to the effect of the settlement agreement upon her impending antenuptial agreement. Simply stated, she had no such duty, and without it, she could not be "charged with knowledge" of that agreement. Without a duty to inquire, negligent ignorance no longer has the same effect in law as actual knowledge. Cf. Applefield v. Commercial Standard Insurance Co., 176 So.2d 366, 377 (Fla. 2d DCA 1965) and authorities cited therein. Without some knowledge of the contents of the settlement agreement, Larna could not have joined in to defraud Ruth.
In addition to knowledge, a second element necessary to establish actionable fraud sub judice is intent. Charter *751 Air Center, Inc. v. Miller, 348 So.2d 614 (Fla. 2d DCA 1977). Even with the requisite knowledge, there must be a conclusive showing of Larna's intent to defraud, or a showing that intent is inapplicable.[15] Nothing in the record herein evidences any indication of intent on Larna's part to join in to defraud Ruth of her expectancy under the will and the settlement agreement. Even assuming arguendo that Larna had knowledge of the contents of the aforesaid agreement, the conclusion that she joined in her husband's allegedly fraudulent activity must fail since no evidence of her intent to defraud was ever established.
Ruth has insisted throughout these proceedings that Larna possessed the requisite knowledge of the settlement agreement and that she conspired with Sam to defraud her of the proceeds of her entitlement under the will and the agreement. Ruth simply did not sustain her required burden of proof on the issue of fraud. It was her obligation to prove fraud, Larna was not obligated to disprove fraud. Biscayne Boulevard Properties v. Graham, 65 So.2d 858 (Fla. 1953). The mere possibility that Larna and Sam may have conspired to defraud Ruth is too tenuous a pillar upon which to construct an elaborate theory of relief based on fraud. Moreover, even conceding that some fraud may have existed on Sam's part, a careful review of the record reveals no substantial competent evidence linking Larna to that fraud.
In summary we conclude:
(1) that Ruth failed to establish a prima facie case of fraud against either Sam or Larna;
(2) that Larna did not have actual knowledge of the contents of the settlement agreement;
(3) that Larna could not be "charged with knowledge" of the contents of the settlement agreement since she had no duty prescribed by law to inquire into the substance of the agreement; and
(4) that it was error to find that she joined in to defraud Ruth since insufficient proof of her intent to do so was adduced below.

II.
The trial court's novel remedy of imposing an equitable lien upon Larna's dower must also fail for the reasons expressed earlier. Since Larna's joinder in fraud was not conclusively established below, it was not appropriate to encumber her entitlement to dower by imposing an equitable lien thereon. Moreover, even had Ruth conclusively proved Larna's joinder in fraud, we would nonetheless have disapproved engrafting an equitable lien on a widow's legitimate right to dower under our law. Such a lien is simply not authorized under Florida law.
Dower is a right of the wife granted to her by law and vests on the death of the husband. Bowler v. Bowler, 159 Fla. 447, 31 So.2d 751 (1947). The inchoate right of dower is purely a prerogative of the legislature which may modify or abolish it at will. It is a personal right which may be exercised only by the widow. In Re Estate of Pearson, 192 So.2d 89 (Fla. 2d DCA 1966). Upon vesting at the death of the spouse, dower is not subject to, affected by, or altered by the acts of the husband, including, but not limited to, contracts which he may have entered into without the wife's actual knowledge or consent. Our own Supreme Court has discussed dower in these words:
"It arises upon marriage, as an institution of the law. The inchoate right of dower has some of the incidents of property. It partakes of the nature of a lien or encumbrance. It is not a right which is originated by or is derived from the husband; nor is it a personal obligation to be met or fulfilled by him, but it is a creature of the law, is born at the marriage altar, cradled *752 in the bosom of the marital status as an integral and component part thereof, survives during the life of the wife as such and finds its sepulcher in divorce." Pawley v. Pawley, 46 So.2d 464, 472-73 n. 2 (Fla. 1950), cert. den. 340 U.S. 866, 71 S.Ct. 90, 95 L.Ed. 632 (1950).
Applying these principles sub judice, we conclude that Larna cannot be deprived of any portion of her dower as a result of the unilateral action of her husband in contracting away that right in a property settlement agreement with another. Her dower right is paramount over the restrictions contained in the settlement agreement. It cannot be contracted away without her consent. That provision of the settlement agreement requiring Larna to waive dower was not enforceable since it was an unjustified encroachment upon her dower right. That right may only be taken away or modified by her voluntary consent, by her own act or by statute. In Re Estate of Cardini, 305 So.2d 71 (Fla. 3d DCA 1974). Thus, the trial court's action of engrafting an equitable lien upon Larna's dower was not authorized by law and cannot be sustained on appeal.
Finally, even if Larna's dower was vulnerable to her husband's action, the equitable lien remedy was nonetheless erroneous under the circumstances of the instant case. There is no authority for the imposition of such a lien on a widow's dower. No authority was cited by the court below justifying the imposition of such a lien and no authority has been cited by the parties in its support.
An equitable lien is generally a fixture of property law imposed when the complainant has no adequate remedy at law and without it, injustice would result. It is a right of a special nature over a particular property that may arise from a written contract which shows an intention to charge the particular property with a debt or obligation, or it may arise out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings in a particular case. Crane Co. v. Fine, 221 So.2d 145 (Fla. 1969); Jones v. Carpenter, 90 Fla. 407, 106 So. 127 (1925).
We need not review at any length the various applications of equitable lien law since such a lien is clearly not appropriate here. To our knowledge, an equitable lien has never been imposed in circumstances remotely similar to those arising in the case at bar and we would hesitate long and hard before extending its application to a widow's right to dower. We are therefore unable to approve the equitable lien remedy employed with such ingenuity by the court below.

III.
Ruth's contention that Sam's marriage to Larna was a nullity since it was so permeated by fraud is without merit based upon our earlier conclusion that fraud was not established below. It is clear that one of the strongest presumptions of the law exists in favor of the validity of the last marriage. The party attacking the legality of the last marriage has the heavy burden of rebutting the presumption that such marriage is valid. Teel v. Nolan Brown Motors, 93 So.2d 874 (Fla. 1957); Carey v. Lee, 360 So.2d 1111 (Fla. 3d DCA 1978). For the reasons expressed earlier in this opinion, Ruth has failed to sustain her required burden of proof on the issue of fraud.[16] We therefore hold that Larna is Sam's lawful widow and entitled to all of a widow's rights under our law. The duration of Larna's marriage to Sam is irrelevant to the issue of its validity. Whether the marriage endures for fifty years or five days has no effect upon its validity so long as all of the statutory requirements have been met at its inception.
We are not prepared, however, to go as far as Larna would have us do and declare the provisions of the settlement agreement requiring Sam's new spouse to waive her dower in favor of Ruth's bequest to be an *753 unconstitutional burden on the right to marry. While we recognize that the right to marry is of fundamental importance for all individuals [Zablocki v. Redhail, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978)], it is not necessary to reach this issue in light of our holding that Larna could not be deprived of her dower right without her consent or in the absence of legislative action.

IV.
As to Ruth's last point involving the imposition of attorneys' fees and costs, we find no abuse of discretion in the trial court's refusal to award attorneys' fees and costs in her favor. Section 61.16, Florida Statutes (1971) does not authorize payment of attorneys' fees to Ruth since this suit was not brought under Chapter 61.
The final judgment is reversed insofar as it purports to impose an equitable lien or any other encumbrance upon any portion of Larna Katz Donner's election to take dower. In all other respects, the final judgment is affirmed.
Affirmed in part, reversed in part and remanded for further proceedings.
NOTES
[1] Our opinion decides only matters raised in this particular consolidated appeal. We have also today released separate opinions deciding a number of other pending appeals arising out of the probate of the Donner estate. These "Donner appeals" have been combined by this court into several distinct consolidated groups of appeals designed to facilitate their resolution. For convenience of reference, the appeals have been designated as follows:

 DONNER I 76-1919 364 So.2d 742
 76-2233
 DONNER II 76-2091
 76-2092
 76-2106 364 So.2d 753
 76-2232
 DONNER III 76-1902
 76-2196 364 So.2d 757
 DONNER IV 76-1078 364 So.2d 758
 DONNER V 77-75 364 So.2d 761
 DONNER VI 78-60 364 So.2d 763

Reference will be made throughout these opinions to "Donner I," "Donner II," etc.
[2] The estate, through its Executors, also filed an appeal from the final judgment (76-2034). That appeal has been voluntarily dismissed.
[3] The trial court has helpfully provided us with extensive findings of fact. We have fully examined this voluminous record, however, for all facts pertinent to a proper disposition of this appeal.
[4] § 732.23, Fla. Stat. (1971). This section has since been repealed and replaced by an entirely new probate code effective January 1, 1976 [Chapters 731 through 735, Fla. Stat. (1977)]. See Ch. 74-106, §§ 3 and 4, Laws of Fla., as amended Ch. 75-220, § 113, Laws of Fla. This consolidated appeal is governed by the provisions of the Florida Probate Code in effect prior to January 1, 1976.
[5] Sam's death sparked a bitter will contest among the various interested parties to the estate that continues unabated after five years. At his death, Sam left a widow (Larna), two ex-wives (Ruth and Beatrice Donner) and an adopted son of his first marriage (Edward). All of these interested parties have established claims against the estate. Priority on the various claims has been determined by the court below and is the subject of a separate consolidated appeal ("Donner II"). By our companion decision released today, Donner v. Anton, 364 So.2d 753 (Fla.3d DCA 1978), we have reversed the order on priorities in part and remanded the case for further proceedings below.
[6] Sam's first wife, Beatrice R. Donner, is not a party to this appeal though not for want of trying. She has vigorously attempted to intervene in this action, both here and below, but she has not been permitted to do so. She is however a party in several other companion opinions released this date. See Donner v. Anton, 364 So.2d 753 (Fla.3d DCA 1978) ("Donner II"); Adler v. Donner, 364 So.2d 758 (Fla. 3d DCA 1978) ("Donner IV"); and Donner v. Donner, 364 So.2d 761 (Fla.3d DCA 1978) ("Donner V").
[7] The settlement agreement between Sam and Ruth provided as follows:

"8. WILL PROVISION. The Husband shall, as part of the settlement, promptly make, execute, and keep in effect until his death, a will under which the Husband shall devise and bequeath unto his Wife, if living, the sum of One Million ($1,000,000.00) Dollars, free of all estate and inheritance taxes. Such bequest shall be payable regardless of whether or not the Wife shall have remarried prior to the death of the Husband. In the event the Husband shall remarry, the Husband agrees that he will, prior to any such marriage, enter into an antenuptial agreement whereby his intended wife will relinquish any claim of dower or right of inheritance which would, but for such antenuptial agreement, diminish the sum to be received by the present wife under the provisions of this paragraph." [Emphasis supplied]
[8] Sam's will of November 24, 1972, filed for probate stated:

"I hereby make the following specific bequests . ..
(c) To my former wife, Ruth Jean Donner, the sum of One Million ($1,000,000) Dollars, if she survives me."
[9] "I give, devise and bequeath all of the rest, residue and remainder of my estate, real, personal and mixed, of whatever nature and wherever situate, including without limitation, all property over which I may have the power of appointment, all lapsed legacies and bequests, to my beloved wife, Larna, if she survives me."
[10] This section was also repealed by Ch. 74-106, Laws of Fla. Larna's election to take dower, filed on December 10, 1974, was properly made pursuant to the Probate Code in effect at the time of her husband's death. In Re: Estate of Humphreys, 299 So.2d 595 (Fla. 1974).

Under the new Florida Probate Code, effective January 1, 1976, dower is expressly abolished [§ 732.111, Fla. Stat. (1977)] and replaced by the surviving spouse's right to take an elective share [§ 732.201, Fla. Stat. (1977)].
[11] Larna, a divorcee, had previously entered into a property settlement agreement with her former husband.
[12] The decretal portion of the final judgment reads as follows:

"The premises considered, it is:
ORDERED AND ADJUDGED that:
(1) Plaintiff, RUTH JEAN DONNER, be and she is hereby entitled to and shall recover from PAUL B. ANTON and WILLIAM I. DONNER, as Executors of the Estate of SAMUEL DONNER, deceased, the sum of $452,210.74 in satisfaction of her lawful claims against the Estate of SAMUEL DONNER, deceased.
(2) That Plaintiff, RUTH JEAN DONNER, be and she is hereby declared entitled to and shall recover from PAUL B. ANTON and WILLIAM I. DONNER, as Executors of the Estate of SAMUEL DONNER, deceased, such further sum as shall be in an amount equal to the deficiency, if any, in the full satisfaction of that certain bequest made to the Plaintiff, RUTH JEAN DONNER, in Item 3(c) of the Last Will and Testament of SAMUEL DONNER, deceased.
(3) Plaintiff, RUTH JEAN DONNER, be and she is hereby declared entitled to and shall recover from LARNA KATZ DONNER by way of equitable lien upon, and shall be equitably subrogated to, the dower award to LARNA KATZ DONNER in the Estate of SAMUEL DONNER, deceased, to the extent that the dower claim of LARNA KATZ DONNER shall reduce RUTH JEAN DONNER'S bequest of ONE MILLION DOLLARS, tax free. Provided, however, that such lien shall be satisfied and discharged in the event the money Judgment awarded against the Executors of the Estate of SAMUEL DONNER, deceased, in Item (2) above be satisfied in full.
(4) The Court further reserves jurisdiction to enter such other orders as may be necessary to carry into effect the provisions of this Judgment.
(5) That execution shall be withheld until further order of the Court."
[13] The trial court found that Sam willfully, knowingly and with conscious intent to do so, breached his settlement agreement by entering into the antenuptial agreement after having finalized the Sam-Ruth agreement:

"The Court further finds that by virtue of the foregoing, the decedent, SAMUEL DONNER, willfully and knowingly and with the conscious intent to do so, breached his Settlement Agreement with his wife, RUTH JEAN DONNER, by his failure to comply with the terms of Paragraph 8 of the Settlement Agreement. That the willful conduct of SAMUEL DONNER knowingly entering into the Antenuptial Agreement with LARNA KATZ within a matter of days after having finalized his Separation Agreement with his wife RUTH, which Antenuptial Agreement was in direct contradiction and violation of the contractual agreement with his wife constituted a fraud upon RUTH JEAN DONNER which has now been joined in by LARNA KATZ DONNER by virtue of her election to take dower and against the Will of her husband wherein she was named as the sole residual beneficiary."
This is not sufficient in our opinion to justify fraudulent activity on Sam's part.
[14] We cannot accept Ruth's assertion, made in her brief and again at oral argument, that the trial court found that Larna had actual knowledge of the contents of the settlement agreement. Our reading of the final judgment convinces us that no such finding was ever made. Moreover, a careful review of the record reveals an absence of substantial competent evidence upon which to base such a finding.
[15] Intent may not be required when constructive fraud is alleged. See generally 14 Fla.Jur. Fraud & Deceit § 31 (1957); Harrell v. Branson, 344 So.2d 604 (Fla. 1st DCA 1977). The final judgment did not distinguish between actual and constructive fraud and we need not do so here. The court below simply found that Sam's actions "constituted a fraud". See note 13 supra.
[16] We note in passing that the trial court did not annul or otherwise invalidate Larna's marriage to Sam on the ground of fraud. The final judgment was silent on this point.